COCA–COLA BOTTLING CO. OF FORT WORTH v. SMITH et ux.

No. 13399.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 18, 1936.

Rehearing Denied Nov. 6, 1936.

Cantey, Hanger & McMahon, J. A. Gooch, and Byron Scarborough, all of Fort Worth, for appellant.

Hyder, Gleeson & Simon, of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

The Coca-Cola Bottling Company of Fort Worth, Tex., has appealed from a judgment in favor of M. A. Smith for damages in the sum of $1,400 for injuries suffered by his wife, Mrs. Mary Smith, who was also a plaintiff in the case, from drinking a bottle of Coca-Cola purchased by her from Roy Gernsbacher, retailer, which it was alleged, contained a part of a decomposed cockroach.

It was alleged in the petition that the defendant Coca-Cola Bottling Company manufactured the beverage known as Coca-Cola and sold it to Gernsbacher, the retailer, who in turn sold it to Mrs. M. A. Smith.

As a basis for the damages claimed, it was alleged that the defendant Coca-Cola Bottling Company of Fort Worth was a manufacturer of the beverage known as Coca-Cola for sale to retail distributors and was liable to the plaintiff by reason of its implied warranty to furnish a pure and wholesome drink.

It was further alleged that if mistaken in that theory of recovery, then the defendant was liable for negligence in furnishing to Gernsbacher, the retailer, the bottle of Coca-Cola containing the decomposed cockroach.

Gernsbacher, the retailer, was not made a party defendant in the suit.

In answer to special issues, the jury found that the defendant was guilty of negligence, which was the proximate cause of plaintiff's injury, and the judgment rendered was based upon that finding.

The testimony showed without contradiction that the bottle of Coca-Cola was filled and sealed by the defendant company and that the seal was not removed until the plaintiff, Mrs. Smith, removed it in order to drink the beverage. Her

testimony was to the effect that after drinking about half of the contents of the bottle she felt some foreign substance in her mouth which she spat out and found it to be a part of a decomposed cockroach; she immediately suffered nausea and vomiting, and that condition lasted for several days, during which time she was unable to eat, had fever, and lost time from her business as a nurse. No witness testified as to when or how the cockroach got into the bottle.

O. A. Brightwell, witness for the defendant, testified without contradiction that he was engaged in the business of selling machinery and equipment for bottlers, and had been so engaged for 17 years. He was familiar with the machinery and bottling equipment of the Coca-Cola Bottling Company of Fort Worth, and had been since its installation. He attends the National Bottlers Convention practically every year, where he is informed on all of the supplies used by other bottling plants in Texas and Oklahoma, including about 180 Coca-Cola plants, and in the opinion of the witness there is no better equipment than that maintained by the defendant in Fort Worth. He visits the defendant's plant about once a week and on those occasions observes the machinery and its working conditions, both while in operation and while idle. The machinery employed by the defendant is known as the Mayer Dumore Bottle Cleaner, which is used by about 75 per cent. of all bottling plants that have been under his observation, and every manufacturer of bottling equipment today has incorporated one or more features of the Mayer Dumore Bottle Cleaner. Defendant's bottling plant is kept in as good condition for operations as any in the state. The operators of the plant take every known precaution for putting out a safe product. The witness then described the machinery used in detail and used pictures to demonstrate to the jury as to how it is constructed and operated. The empty bottle is brought down on the table of the washer just as it is unloaded from the truck; a man stands there and lines up the bottles on what is known as the feed rack. First, all paper is removed from the bottles and they are then placed on the rack without being touched by human hands. The neck of the bottle is down; an endless chain then takes the bottle through five different solutions of water and caustic soda, at a temperature of 110 to 145 de-

grees Fahrenheit, which is strong enough to eat up the human hand. In the different compartments the bottles are emptied and refilled with different solutions; they are finally rinsed in fresh water at a temperature of 110 degrees and then filled with Coca-Cola and capped before leaving the conveyor, and sold to the retailer as thus capped.

Whether or not the finding of the jury can be sustained upon the doctrine of res ipsa loquitur is one of the questions presented here.

Appellees insist that the very fact that the cockroach was found in the bottle was, prima facie, evidence that its presence there was due to the defendant's negligence, as found by the jury, especially since there was evidence offered tending to show that it could have fallen or crawled into the bottle before it was capped. In support of that contention appellees cite the decision of the Eastland Court of Civil Appeals in the case of Dunn v. Texas Coca-Cola Bottling Company, 84 S.W.(2d) 545, 548, in which a writ of error was dismissed. That was a suit for damages sustained by plaintiff from drinking Coca-Cola in which there were fine particles of broken glass. We quote the following from the opinion in that case: "If the appellee in bottling its Coca-Cola with the purpose and intention that it be sold for human consumption so prepared and marketed it that it contained pieces of broken glass, such facts alone, if they did not compel, would, we think, certainly warrant an inference of negligence," citing Armstrong Packing Co. v. Clem (Tex. Civ.App.) 151 S.W. 576.

Appellant insists that the finding of negligence cannot be sustained under the doctrine of res ipsa loquitur, and cites the following authorities in support of that contention: Swenson v. Purity Baking Co. [183 Minn. 289], 236 N.W. 310, in which the following appears in the syllabus prepared by the court:

"This action, based upon the alleged negligence of defendant, was brought to recover damages claimed to have been sustained by plaintiff because she saw a dead larva in a slice of bread manufactured by defendant which she was about to eat; she did not put the bread in her mouth. It is held:

"It was incumbent upon plaintiff to prove defendant's negligence. Defendant was not an insurer against the happening com-

plained of. The evidence for defendant conclusively showed that every reasonable precaution had been taken to prevent the presence of foreign matter in the bread. A jury verdict against defendant would have been based upon speculation and conjecture and could not stand. The court properly directed a verdict for defendant."

Res ipsa loquitur does not apply in a Coca-Cola case and plaintiff cannot go to the jury on proof of the occurrence and injury without more. Dail v. Taylor, 151 N.C. 284, 66 S.E. 135, 28 L.R.A.(N.S.) 949.

Res ipsa loquitur does not apply even though the pie was made on the premises of the defendant and made under its exclusive control. Ash v. Childs Dining Hall Co., 231 Mass. 86, 120 N.E. 396, 4 A.L.R. 1556.

Proof of eating oyster stew and becoming sick as a result therefrom is not sufficient to make out a prima facie case of negligence against the defendant. Sheffer v. Willoughby, 163 Ill. 518, 45 N.E. 253, 34 L.R.A. 464, 54 Am.St.Rep. 483.

"Mere presence of small particles of glass in strawberry shortcake made by drug store from cake, berries, and cream purchased from others, is alone insufficient to establish prima facie case of negligence in purchaser's action for damages; there being nothing to warrant inference that purchaser's injuries resulted from want of proper inspection or preparation by drug store." O'Brien v. Louis K. Liggett Co., 255 Mass. 553, 152 N.E. 57, 47 A.L.R. 146.

See, also, an extended discussion of the doctrine of res ipsa loquitur in L.R.A. 1917E, beginning on page 4, by the courts of numerous states, including Texas, beginning on page 158. The discussion, however, is confined principally to the relation of master and servant. Also, Davis v. Castile (Tex.Com.App.) 257 S.W. 870.

See notes of decisions in 22 A.L.R., beginning on page 1471, citing numerous cases in which it was held that an inference of negligence under the rule of res ipsa loquitur may be conclusively overcome by proof of facts which negative the existence of negligence, including South Baltimore Car Works v. Schaefer, 96 Md. 88, 53 A. 665, 94 Am.St.Rep. 560; Central of Georgia Ry. v. Robertson, 203 Ala. 358, 83 So. 102; Lockwood v. Chicago & N. W. Ry., 55 Wis. 50, 12 N.W. 401; Young v. Mason Stable Co., 193 N.Y. 188, 86 N.E. 15, 21 L.R.A.(N.S.) 592, 127 Am.

St.Rep. 939. Also Taylor v. White (Tex. Civ.App.) 156 S.W. 349, 352, in which the following was said: "Where the only inference that can reasonably be drawn from the evidence is that the master conformed to the usage of prudent men in well-regulated concerns, engaged in his trade or business in the adoption and use of the instrumentalities, he may be declared as a matter of law to have been in the exercise of due care. Houston & T. C. Railway Co. v. Alexander, 103 Tex. 594, 132 S. W. 119; Southern Pacific R. Co. v. Seley, 152 U.S. 145, 14 S.Ct. 530, 38 L.Ed. 391; 1 Labatt on Master & Servant, §§ 44, 163; Houston & Texas C. Ry. Co. v. Cowser, 57 Tex. 293."

That case went to the Supreme Court, and in the opinion of the Commission of Appeals, appearing in 212 S.W. 656, 657, this was said: "The custom of others engaged in like business is not the absolute test of negligence, but where the undisputed evidence shows affirmatively, as it does in this case, that the defendant was conducting his business in accordance with the uniform custom of persons engaged in like business, it devolves upon the plaintiff, before he can recover, to produce evidence showing that such custom is negligent. In the absence of such testimony, the legal presumption is that those engaged in like business were reasonably prudent in the conduct of their business, and that they discharged their legal obligations for the safety of their servants. Houston & T. C. Railway Co. v. Alexander, 103 Tex. 594, 132 S.W. 119; Canadian Northern Railway Co. v. Senske, 201 F. 637, 120 C.C.A. 65."

Under those decisions appellant insists that any inference of negligence arising from the presence of the cockroach in the bottle of Coca-Cola was conclusively overcome by the uncontradicted testimony of the witness O. A. Brightwell, noted above.

Appellant insists further that it could not be held liable for the damages sought in this case on the theory of an implied warranty, since there were no contractual relations between it and the plaintiff, who did not purchase the beverage from it, but from Gernsbacher, the retailer. That contention is sustained by the decision of the Court of Civil Appeals in the case of Dunn v. Texas Coca-Cola Bottling Co., 84 S.W.(2d) 545, supra, in which a writ of error was dismissed; also Woolworth Co. v. Wilson (C.C.A.) 74 F.(2d) 439, 98

A.L.R. 681, with the following quotation from Judge Sibley in that case: "Where for consideration food is prepared and served to customer to be consumed on premises from dishes and by means of utensils of furnisher as in case of purchaser of ice cream soda, there is no implied warranty of fitness and quality, but furnisher is liable, if at all, for negligence."

Many other decisions to the same effect are cited which are also cited in the opinion of the Court of Civil Appeals in the Dunn Case, noted above.

Appellees cite the case of Brown Cracker & Candy Co. v. Jensen, 32 S.W.(2d) 227, by the Waco Court of Civil Appeals. That was a suit against appellant by Mrs. Jensen for damages resulting from eating impure candy purchased by her from Woolworth & Co., a retailer, who had bought the same from the defendant manufacturer, Brown Cracker & Candy Company, in which the Court of Appeals apparently approved the holding of the trial court that the defendant was liable to plaintiff, both on the theory of negligence and on implied warranty that the candy was wholesome. However, that decision was on appeal from an interlocutory judgment overruling a plea of privilege, and, hence, never reached the Supreme Court. 3 Tex.Jur. p. 133.

Also the decision of the Beaumont Court of Civil Appeals in the case of Kress & Co. v. Ferguson, 60 S.W.(2d) 817, 818 (writ refused), holding that the sale by the Kress Company of the ice cream to the plaintiff implied a warranty that the same was wholesome and contained no deleterious substance, and was fit for consumption. And the plaintiff was allowed a recovery for breach of that warranty, independently of the finding by the jury that defendant was guilty of negligence in selling the article in that condition, and which was made the basis of plaintiff's recovery in the trial court. As shown in the opinion in that case, on the trial in the lower court a written agreement was entered into by the parties, in which it was admitted by the defendant company that it prepared and sold to plaintiff a vanilla ice cream soda, and that "among the ingredients which were put in said ice cream soda in preparation thereof by defendant were vanilla syrup, flavoring, carbonated water and vanilla ice cream. The ice cream put into said ice cream soda contained deleterious and harmful ingredients, injurious as an article of food; that by reason of consuming said ice cream in said ice cream soda the plaintiff, Zell Ferguson, was very shortly thereafter made sick."

In view of plaintiffs' inability to prove just how the cockroach happened to be in the bottle of Coca-Cola and the superior knowledge of defendant as to the process employed to manufacture and bottle the beverage, and its manifest inability to produce a witness to testify just how this particular bottle of the beverage was cleaned before it was filled, we believe plaintiffs were entitled to invoke the rule of res ipsa loquitur on the issue of negligence. 45 C.J., p. 1193 to 1207. And under that rule and the decisions noted above we overrule the assignment of error challenging the finding of the jury that defendant was guilty of negligence, which was the proximate cause of plaintiff's injury, as being without competent evidence to support it; notwithstanding the uncontradicted testimony of the witness Brightwell that defendant's plan of manufacturing and bottling the beverage was the one adopted and followed by other manufacturers engaged in a like business as the best and most efficient process. And in this connection we deem it proper to observe that according to his testimony, the presence, if any, of the cockroach in the bottle was an unusual occurrence, which, according to many authorities, is one of the facts tending to support a finding of negligence under the doctrine of res ipsa loquitur. Furthermore, it is manifest that in manufacturing and placing on the market the beverage for use by purchasers, without opportunity to discover its unwholesomeness, defendant owed the duty to exercise a higher degree of care and caution than that involved in the case of Taylor v. White, 212 S.W. 656, by the Commission of Appeals and cited above, even though in each case the care required is designated in law as ordinary care. Also, see, Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001.

We conclude further that the acts of the defendant in manufacturing and putting on the market the Coca-Cola drink in sealed bottles for immediate use by the purchaser of the same from the retailer to whom the defendant had first sold it, implied a warranty not only to the retailer, but to the one who purchased the same from him, that the beverage was

wholesome and free of any substance injurious to health.

■ We recognize the universal rule that a warranty, either express or implied, must grow out of contractual relations between the parties.

"All jurisdictions concur in holding that a manufacturer warrants the fitness of goods he manufactures for a particular purpose of which he is expressly or impliedly informed by the buyer, if the buyer relies upon the manufacturer's skill and judgment in furnishing the goods. The implied warranty of fitness is independent of the manufacturer's negligence, or of a stipulation for trial and approval by the buyer, and does not depend upon fraud or lack of good faith. Even if the particular purpose is not known to the manufacturer who is the seller, there is an implied warranty that the goods are reasonably fit for the purpose for which they are manufactured and designed to be used." 55 C.J., p. 750.

"What is implied in a written contract is as much a part of it as though it were expressed therein; and the fact that an obligation rests in implication and not in words does not affect the substantive rights of the parties, although it may have an important bearing on remedies and their enforcement. For example, an implied obligation may be sufficient to supply the necessary mutuality of obligation in a contract; and the breach of an implied provision gives rise to a right of action, the same as if it had been written into the contract." 10 Tex.Jur., p. 318.

"A person may enforce a contract made by others for his benefit, or, in other words, a contract entered into by two parties for the benefit of a third person may be enforced by the latter. The law establishes the privity of contract in such cases, and it is not necessary that the person for whose benefit the contract was made be a party to it or in actual privity with it. Nor is it necessary that there be any obligation or duty owing to such person from the promisee, nor that any consideration pass from him to the promisor, although of course the contract must be supported by a consideration as between the promisor and the promisee." 10 Tex. Jur., p. 479.

"To entitle a third person to sue on a contract, it must have been made for his benefit as its object, and he must be the party intended to be benefited. It is not necessary that he be named in the contract, however, nor even that the particular person to be benefited be known when the contract was made; it is sufficient if a third person be in some measure pointed out and designated as the one intended." 10 Tex.Jur., p. 483.

"Contracts implied in law, or more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction, and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. So, when the party to be bound is under a legal obligation to perform the duty from which his promise is inferred, the law may infer a promise even as against his intention." 13 C.J., p. 244.

"In many of the cases the doctrine is stated broadly that a person may maintain an action on a promise made for his benefit, although not a party to the contract; but this statement of the doctrine is too broad. By the weight of authority the action cannot be maintained merely because the third person will be incidentally benefited by a performance of the contract; he must be a party to the consideration, or the contract must have been entered into for his benefit, and he must have some legal or equitable interest in its performance; and under the code provisions of some states the contract must be made expressly for the benefit of the third person in order to entitle him to sue thereon. If the person for whose benefit a contract is made has either a legal or an equitable interest in the performance of the contract, he need not necessarily be privy to the consideration. The name of the person to be benefited by the contract need not be given, if he is otherwise sufficiently described or designated. The fact that the particular person who is to benefit from the promise is not known when the promise is made is immaterial. He may be one of a class of persons if the class is sufficiently described or designated. And the fact

that the person to whose benefit a promise may inure is uncertain at the time it is made, and that it is dependent on a contingency, will not deprive the person who afterward establishes his claim to be the beneficiary of the promise of the right to recover upon it. Further, the party benefited need not have known of the contract at the time it was made if he afterward adopts it. And while an acceptance of the contract is necessary, the bringing of suit on it is ordinarily evidence thereof." 13 C.J., p. 709.

We believe that the many decisions of other states holding the manufacturer liable to the consumer of a beverage intended for immediate consumption, on the principle of implied warranty, are supported by better reasoning and on sounder principles than the great number of decisions to the contrary. Manifestly, the Coca-Cola Company, defendant in this suit, manufactured and sold the same to the retailer, not for consumption by the latter, but to be consumed by an ultimate purchaser from the retailer. And the implied representation that it was wholesome and free of deleterious substances was intended to induce the consumer to purchase it, the same as advertisements of the qualities of such a beverage carried in the press and posted on the highways which are commonly resorted to by manufacturers of such articles. And since such representations were made to induce the ultimate purchase of the beverage from the retailer, it should follow that the defendant's implied warranty to the retailer who purchased from it with knowledge and intention on the part of the defendant that the beverage would be sold and consumed by a purchaser from the retailer ran with the article and inured to the benefit of the plaintiff who purchased from the dealer.

This conclusion is in accord with the general public policy reflected in our federal and state statutes for the protection of consumers of articles of food, drugs, etc., in the interest of public health. In title 21 of the United States Code Annotated, it is made a penal offense for a manufacturer, wholesaler, or jobber to sell foods, drugs, or drinks in violation of various provisions of the act forbidding adulteration and misbranding; but in section 13 of the U.S.C.A. the dealer cannot be prosecuted if he purchases from a manufacturer or jobber or wholesaler under a written guaranty of the latter that the article is not adulterated or misbranded within the meaning of the act. Substantially the same regulations and penalties appear in article 4471 of our Revised Civil Statutes and article 706 of the Penal Code of Texas, with the same immunity from prosecution in favor of the dealer in article 714 of the Penal Code.

Those statutory provisions manifest a legislative purpose to protect the public against the sale of unwholesome foods, drinks, and drugs, and to place upon the manufacturer, wholesaler, or jobber the primary responsibility for violation of those statutory regulations. And even though it be said that the sale by the defendant to the dealer Gernsbacher was not in violation of those statutory provisions, we believe the general public policy which they manifest, and knowledge of which must be imputed to defendant when it sold the Coca-Cola to Gernsbacher, the dealer, may be looked to in determining the issue of implied warranty. 10 Tex.Jur., § 182, p. 316.

We believe it clear that plaintiff could rely on general allegations of negligence without specifying the particular acts or omission constituting such negligence, since it was impossible for her to be more specific in that respect, and since the method of manufacturing and bottling the Coca-Cola was particularly within the knowledge of the defendant.

We believe further that the definition given in the court's charge of ordinary care in submitting the issue of defendant's alleged negligence was substantially correct.

Issue No. 7, submitted by the court to the jury, reads:

"Do you find from a preponderance of the evidence that the plaintiff Mrs. Mary Smith suffered any or all of the damages set forth in her petition herein by reason of having drunk the bottle of coca-cola, as alleged in her petition."

Numerous decisions have held that it is improper to refer the jury to the allegations in plaintiff's petition, including the following: Farmers' & Mechanics' National Bank v. Marshall (Tex.Civ.App.) 4 S.W.(2d) 165; Hewitt v. Buchanan (Tex. Civ.App.) 4 S.W.(2d) 169; Arkansas Fuel Oil Co. v. Connellee (Tex.Civ.App.) 39

S.W.(2d) 99, and numerous authorities noted in opinion in that case; Luling Oil & Gas Co. v. Edwards (Tex.Civ.App.) 32 S. W.(2d) 921; Texas Indemnity Ins. Co. v. Pemberton (Tex.Civ.App.) 9 S.W.(2d) 65.

Accordingly, the assignment of error to the giving of that charge, which was duly excepted to at the time of the trial, is sustained, especially in view of the fact that under the present statutes the jury is not permitted to take with them the pleadings of the parties on which the case is tried, and in the absence of such pleadings it is entirely improbable that the jury remembered what damages were alleged in plaintiffs' petition.

We overrule the assignment complaining of the refusal of the court to submit to the jury the defendant's requested issue as to whether or not it used that degree of care in the manufacture and delivery of its Coca-Cola that the ordinary and prudent bottlers all over the country use, since, as held by the Commission of Appeals in Taylor v. White, 212 S.W. 656, above noted, "the custom of others engaged in like business is not the absolute test of negligence."

The court refused defendant's request to submit the following issue: "Do you find from a preponderance of the evidence that the condition in which Mrs. M. A. Smith is at this time, and has been since September 28, 1934, is due solely to a mental reaction to seeing the cockroach on the occasion in question? Answer yes or no."

The assignment of error addressed to that ruling is sustained, since the uncontroverted testimony of plaintiff's witness, Dr. Judge M. Lyle, who treated her, in conjunction with that of the witness O. A. Brightwell, strongly tended to show that any injurious results suffered by her from drinking the beverage amounted to no more than a temporary upset of stomach, with no poisonous effects, while the allowance by the jury of damages in the sum of $1,400 necessarily implies a finding of poisonous effects of the drink in addition to a temporary upset of stomach. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, and authorities there cited.

For the errors pointed out, the judgment of the trial court is reversed, and the cause is remanded.