**MAXWELL et al. v. WALTERS PETROLEUM CORPORATION et al.**

No. 5023.

Court of Civil Appeals of Texas. Texarkana.

Nov. 3, 1938.

Rehearing Denied Nov. 10, 1938.

814

Turner, Rodgers, Winn & Sellers and W. H. Sanford, all of Dallas, and McEntire, James & Shank, of Tyler, for appellants.

Clower & Sewell, of Tyler, and Brachfield & Wolfe, of Henderson, for appellees.

JOHNSON, Chief Justice.

This suit was filed by Walters Petroleum Corporation and M. L. Thompson against H. C. Maxwell and Stanolind Oil and Gas Company, seeking to recover title and possession of ½ acre of land located in the F. Cardova Survey in Rusk County. The land was in possession of defendant H. C. Maxwell who claimed the fee and the defendant Stanolind Oil and Gas Company who claimed the leasehold minerals by virtue of an oil and gas lease executed by Maxwell. Plaintiff M. L. Thompson claimed title to the fee and plaintiff Walters Petroleum Corporation claimed title to the leasehold minerals by reason of an oil and gas lease executed by Thompson. Plaintiffs' first amended original petition, on which they went to trial, was in statutory form of trespass to try title, and affirmatively pleads the five-, ten-, and twenty-five-year statutes of limitation (Vernon's Ann.Civ.St. arts. 5509, 5510, 5519). Defendants' answer contains a general demurrer, general denial, plea of not guilty, and specially pleads the three, five, ten, and twenty-five-year statutes of limitation. On trial to a jury the evidence developed the case into a boundary suit. The dispute was as to the true location on the ground of a dividing boundary line, running East and West, between a 19-acre tract of land owned by Maxwell on the North, and a tract of land owned by Thompson on the South, described in his petition as containing 7.19 acres. Maxwell's land is described in his title papers by metes and bounds and is therein referred to as being the "Sam Smith tract." For description in his title papers, Thompson's land is bounded by other named tracts, the North boundary line is described as "bounded on the North the Sam Smith place." So the South boundary line of Maxwell's 19-acre tract, referred to in their respective titles as the Sam Smith place, constitutes the North boundary line of Thompson's land. Therefore to locate the North boundary line of Thompson's land the burden was upon plaintiffs to locate the South boundary line of the "Sam Smith place." The testimony of plaintiffs' witnesses would locate the South boundary line of the "Sam Smith place" North of the present Tyler-Henderson public road, which road at the place in question runs in the direction of East and West. However, plaintiffs' witnesses are not in accord as to the exact location on the ground of said line. Their testimony would locate it at three or more places, varying in distances ranging from 50 to 100 feet North of the Tyler-Henderson road. The testimony of defendants' witnesses would

locate the disputed line coincident with the Tyler-Henderson road. Upon findings of the jury in response to special issues, judgment was entered for plaintiffs. From an order overruling their motion for new trial defendants have perfected their appeal.

In the trial court and here appellants have properly attacked that part of the trial court's charge to the jury reading as follows:

"(6) Calls for surveys are important in the following order: (a)—calls for natural objects, such as creeks, rivers and mountains: (b)—calls for artificial objects, such as marked lines and established corners: (c)—calls for courses and distances—but neither of the above absolutely control any other class, where such other calls more truly indicate from the evidence the true locality of a boundary in controversy.

"In determining the location of a disputed boundary line, the footsteps of the surveyor who first ran the disputed line, should be followed as far as the same can be identified and established by the evidence.

"In determining the location of a disputed boundary line, the object and purpose of all rules is to determine the true location of the survey and to establish the lines and corners as they were originally located and established by the suveyor on the ground if they were so established.

" 'Line Number One' purports to represent the true and correct south boundary line of the Samuel G. Smith tract of land located in the Cordova Survey in Rusk County, Texas, as identified by plats and witnesses introduced in evidence in this case by the plaintiffs, as claimed by them in their pleadings.

" 'Line Number Two' purports to represent the true and correct south boundary line of the Samuel G. Smith tract of land located in the Cordova Survey in Rusk County, Texas, as identified by plats and witnesses introduced in evidence in this case by defendants, as claimed by them in their pleadings.

"Special Issue No. 1; From a preponderance of the evidence in this case, which of the lines, whether Number One or Number Two, do you find to be the true and correct south boundary line of the Samuel G. Smith tract of land located in the Cordova Survey in Rusk County, Texas,

"Your answer will be Line No. 1, or Line No. 2, as you find the facts to be."

The jury answered: (Line) "No. 1."

■ Appellants contend that the charge was erroneous, misleading and confusing wherein it instructed the jury to determine the disputed boundary line by following the footsteps of the surveyor who first ran the disputed line as far as can be identified and established by the evidence. We think the contention should be sustained. The only evidence as to the first survey of the disputed line, or of any of the land involved, was a survey made by appellees' surveyor shortly before the filing of the lawsuit. None of the bearing trees or markings called for in the several instruments of title to the respective tracts were found to exist on the ground, nor was there any evidence of any survey having been made prior to the survey made by appellees' surveyor. In such circumstances the charge of the court is calculated to cause the jury to give undue weight to the testimony of appellees' surveyor who, according to the evidence before the jury, was "the surveyor who first ran the disputed line."

■ It is further contended that the charge was erroneous, misleading and confusing wherein it instructs the jury that "Line No. 1" and "Line No. 2" purport to represent the South boundary line of the Sam Smith tract of land as identified by (1) plats and (2) witnesses introduced in evidence by the respective parties, and (3) as claimed by them in their pleadings. This contention is sustained for reasons, among others, discussed below. First, the Statement of Facts agreed to by attorneys and approved by the court contains seven plats, and on only one of the plats are such purported lines identified as "No. 1" and "No. 2". And on said plat the lines are numbered in reverse order to that stated in the court's charge. That is to say, the charge designates the line claimed by plaintiffs (the North line) as "Line No. 1", while the plat designates it as "No. 2"; and the charge designates the line claimed by defendants (the South line) as "Line No. 2", while the plat identifies it as "No. 1." Second, the evidence did not authorize the court to restrict the jury's consideration of the true location of the disputed boundary line to one or the other of two lines or places; for the testimony of plaintiffs' witnesses alone would tend to locate the disputed boundary line at more than two places

North of the Tyler-Henderson road, and the testimony of one of plaintiffs' witnesses, Mr. Klotz, a surveyor, on cross examination by defendants would tend to locate it South of the Tyler-Henderson road; and the testimony of the defendants' witnesses would locate it coincident with said road. Third, as a general rule, it is improper to refer the jury to the pleadings of the parties in order for them to ascertain the issues presented. Bering Mfg. Co. v. Femelat, 35 Tex.Civ.App. 36, 79 S.W. 869; Coca-Cola Bottling Co. of Fort Worth v. Smith, Tex.Civ.App., 97 S.W.2d 761, 763. The rule has application here, wherein the court directed the jury to the pleadings of the parties to ascertain themselves the issue as to the location on the ground of the disputed boundary line "as claimed by them in their pleadings." Also it is observed that an examination by the jury of the pleadings in this case would lead them to conjecture more than accuracy in attempting to determine therefrom where either party claimed the disputed line to be located.

■ Appellants further claim that the charge is a general charge and informs the jury of the result of their answer. We think a reading of the charge above set out sufficiently reveals that appellants' complaint should be sustained. The instructions are on the law of the case. They are not explanations or definitions of any legal terms. They also inform the jury as to the effect of their answer. Where, as in this case, the cause is submitted on special issues, such instructions are held to be reversible error. Mayfield Co. v. Pepper, 129 Tex. 307, 103 S.W.2d 737, and authorities there cited. In Humble Oil & Refining Co. v. McLean, Tex.Com.App., 280 S.W. 557, is said [page 559]: "A 'general charge' is an instruction given by the court to the jury as to the law pertaining to the case, or any phase thereof." In Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, it is said [page 497]:

"It is well settled in this state that, when a case is submitted to the jury upon special issues as provided in article 2189, R.C.S., no general charge shall be given nor shall the court in any way so instruct the jury or frame the issues in a way that the jury may know therefrom what the effect of its answers shall be upon the judgment to be rendered."

■ In answer to special issues 2, 3, and 4, the jury found in favor of appellees on their pleas of five, ten, and twenty-five-year statutes of limitation. Appellants have properly challenged these findings as being without support in the evidence. An examination of the evidence shows that the testimony most favorable to appellees, disregarding all contradictions, does not support the findings of the jury in answer to either of said issues. The strongest evidence in support of the findings of the jury is the testimony of appellee Thompson. His testimony is to the effect that he purchased his land in 1922, located South of the Tyler-Henderson road, and that he claims the ½ acre in question lying North of said road to be a part of his said tract of land. That his land located South of the road was under fence at the time of his purchase and that he immediately went into possession of it and has since continuously occupied it. That the ½ acre North of the road was never fenced. That his only possession or use of the ½ acre North of the road was that "when the oil field came in" (about September 30, 1930) he gave George Eaton permission to use it. George Eaton built a "cow-pen" on the land and used it as such for a short time. Subsequently, sometime in the year 1931, Luther Maxwell, son of H. C. Maxwell, leased the land from Mr. Thompson, constructed a small building and filling station thereon and paid rent to Mr. Thompson for a period of six months. Mr. Thompson further testified that the churches of that community had held meetings on the land with his permission. The dates of such meetings are not shown. The date of the filing of appellees' original petition is not shown. Appellees' first amended original petition was filed April 25, 1935. The testimony fails to show that Mr. Thompson had possession of the ½ acre of land in question for any period of time sufficient to acquire title under either of the statutes of limitation.

The judgment of the trial court will be reversed and the cause remanded.