404

## JACOB E. DECKER & SONS, Inc., v. CAPPS et al.

### No. 11051.

Court of Civil Appeals of Texas. Galveston.

Oct. 17, 1940.

John P. Doyle, of Chicago, Ill., Arnold & Arnold, Richard L. Arnold, and William H. Arnold, Jr., all of Texarkana, Ark., for appellant.

Perry R. Meredith, of Longview, Florence & Florence and Russell Surles, all of Gilmer, and E. M. Dodson, of Marlin, for appellees.

MONTEITH, Chief Justice.

Elbert Lee Capps, a minor, by next friend, Opal Geraldine Capps, a minor, by next friend, and Mrs. C. K. Capps, a widow, instituted suits against Jacob E. Decker & Sons, Inc., to recover damages alleged to have been sustained by them as a result of eating poisonous and contaminated food alleged to have been manufactured and sold by appellant. The three suits were consolidated and tried together.

Appellees alleged that appellant was a manufacturer of meats, including Cervalet Sausage, for the purpose of sale to retail dealers, knowing that said meats would be re-sold to the public for consumption as food; that they sustained the damages alleged as a result of eating said sausage, which had been impliedly warranted by appellant and that by reason of the condition of said sausage appellant had breached said implied warranty.

They alleged that the contaminated condition of said sausage was due to the negligence of appellant in manufacturing and processing it and in failing to exercise care in its inspection.

Appellant answered by general and special demurrers and by general denial. It specially pled that the sale of said sausage was contrary to law and public policy, in that it was made on Sunday, and that, since the sausage was shipped in interstate commerce and that appellant had complied with all the regulations of the Department of Agriculture of the United States in its manufacture and processing, it was not guilty of negligence.

In answer to special issues submitted, a jury found, in effect, that said sausage was contaminated and poisonous at the time of its manufacture by appellant to such an extent as to be unfit for human consumption; that it had been sold by appellant to J. L. Unger, a retail merchant, and purchased from Unger by C. K. Capps on March 19, 1939, and that the eating of said sausage was a proximate cause of the injuries complained of by appellees. It was found, however, that the contaminated and poisonous condition of said sausage was not due to appellant's negligence and that the illness complained of by appellees was the result of an unavoidable accident.

Each of the appellees was awarded damages in the sum of $500 and judgment was rendered in their favor in the sums awarded.

The material facts are undisputed. They are substantially as follows: C. K. Capps, the father and husband of appellees, purchased a piece of Cervalet sausage manufactured by appellant from J. L. Unger, a retail dealer, on March 19, 1939, while on a trip by automobile with his family, consisting of his wife and three children, from Gregg County, Texas, to Oklahoma. At the time of said purchase, the cellophane wrapper on said sausage was unbroken. The entire family of five ate portions of said sausage and each became violently ill during the night. One of the children died. After their arrival in Oklahoma, a small piece of sausage to which was attached a piece of cellophane on which was stamped the name of "Decker C. E." was found on the floor of the automobile. A bacteriologist testified that he had examined the sausage and that it contained germs of ptomaine. Unger identified it as similar to the article sold by him to C. K. Capps. Appellant's evidence showed that every reasonable precaution had been taken in the manufacture and inspection of said sausage to prevent it from becoming contaminated or unfit for human consumption.

The jury having found in answer to special issues submitted that appellant was not guilty of negligence and that the illness of appellees was the result of an unavoidable accident, the judgment of the trial court must be sustained, if at all, on the theory of the breach of an implied warranty.

While there are many conflicting decisions of the courts of both Texas and other states as to whether an ultimate consumer may maintain an action directly against a manufacturer for injuries sustained from the consumption of contaminated articles of food and beverage on the implied warranty that the article purchased was wholesome and fit for human consumption, we think that the decisions holding the manufacturer liable to the consumer on the principle of implied warranty, are supported by better reasoning and are based on sounder principles than the decisions to the contrary.

The appellant herein, when it sold the sausage in question to the retail merchant, unquestionably impliedly represented to him and to the public, the ultimate consumer of the article purchased, that it was free from injurious substances and was fit for consumption as food. There is no question but that an implied warranty arose between the manufacturer and the retailer, J. L. Unger, who purchased said sausage from it. Since appellant was aware that the retailer did not purchase said article for his own consumption, but that it had purchased the sausage for the purpose of selling it to the public, this implied obligation, which unquestionably arose in favor of the retailer, ran with and inured to the benefit of appellees, who purchased the article from the retailer.

This theory is sustained in the recent case of Coca-Cola Bottling Works of Fort Worth v. Smith, 97 S.W.2d 761, 765, in which Chief Justice Dunklin of the Fort Worth Court of Civil Appeals, in his opinion, says:

"We conclude further that the acts of the defendant in manufacturing and putting on the market the Coca-Cola drink in sealed bottles for immediate use by the purchaser of the same from the retailer to whom the defendant had first sold it, implied a warranty not only to the retailer, but to the one who purchased the same from him, that the beverage was wholesome and free of any substance injurious to health. * * *

"We believe that the many decisions of other states holding the manufacturer liable to the consumer of a beverage intended for immediate consumption, on the principle of implied warranty, are supported by better reasoning and on sounder principles than the great number of decisions to the contrary. Manifestly, the Coca-Cola Company, defendant in this suit, manufactured and sold the same to the retailer, not for consumption by the latter, but to be consumed by an ultimate purchaser from the retailer. And the implied representation that it was wholesome and free of deleterious substances was intended to induce the consumer to purchase it, the same as advertisements of the qualities of such a beverage carried in the press and posted on the highways which are commonly resorted to by manufacturers of such articles. And since such representations were made to induce the ultimate purchase of the beverage from the retailer, it should follow that the defendant's implied warranty to the retailer who purchased from it with knowledge and intention on the part of the defendant that the beverage would be sold and consumed

by a purchaser from the retailer ran with the article and inured to the benefit of the plaintiff who purchased from the dealer."

In the case of Kress & Co. v. Ferguson et al., Tex.Civ.App., 60 S.W.2d 817, 818, the court in its opinion says: " * * * we hold, appellant impliedly warranted that the food sold appellee Zell Ferguson was wholesome, contained no deleterious substance, and was fit for consumption. We are aware that on this question the decisions of the courts of the various states are conflicting, but we think that the great weight of modern authority, and the better reasoning, supports our holding. Many, if not most, of the older cases which hold to the contrary, went off on the idea that there had not been a sale of food, but of service in serving the food. * * * Even under the old decisions, a sale by appellant having been conceded the implied warranty of the wholesomeness of the food sold and its fitness for the use for which it was bought, follows. As supporting our holding of implied warranty * * *." Citing numerous cases.

The holdings in the above cases are followed in the case of Brown Cracker & Candy Co. v. Jensen et al., Tex.Civ.App., 32 S.W.2d 227.

In the case of Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170, the Commission of Appeals, in passing on the question of liability of a retail merchant to the purchaser of a can of corn which was alleged to be poisonous, held that the retailer was liable to the purchaser on an implied warranty that the corn sold him was a pure and wholesome food. It was held that, since the identity of the manufacturer had been concealed, the retailer took his place.

Appellant relies upon the case of Dunn v. Texas Coca-Cola Bottling Company, Tex. Civ.App., 84 S.W.2d 545, writ of error dismissed, in support of its contention that a purchaser from a retail merchant cannot hold the manufacturer of the purchased goods for damages in the event the goods are not fit for human consumption on the ground of implied warranty. The Court of Civil Appeals reversed and rendered the case for plaintiff on the grounds that plaintiff was entitled to judgment on the findings of the jury on the issues of negligence on the part of defendant. The Supreme Court, in dismissing the writ of error, decided only that a correct judgment had been rendered by the Court of Civil Appeals. This action did not necessarily involve the question of implied warranty.

Appellant contends that, since the alleged sale to J. L. Unger was made on Sunday, the sale and contract were in violation of Arts. 286 and 287, Penal Code of the State of Texas, Vernon's Ann.P.C. arts. 286, 287, which forbids the sale of food and provisions after 9 o'clock on Sundays, and that no action could be maintained based on an alleged breach of warranty on said sale, and that therefore there could be no implied warranty arising out of said contract, and no breach thereof. This contention cannot be sustained. The question involved herein was decided contrary to appellant's contention in the case of Texas Employers' Ins. Ass'n v. Tabor, Tex.Civ. App., 274 S.W. 309, 311, affirmed by the Commission of Appeals, 283 S.W. 779.

This action was brought to set aside an award of the Industrial Accident Board. Appellant contended that the contract involved services to be rendered on Sunday which were in violation of Art. 299 of the Penal Code, which forbids labor on Sunday, and that therefore the relation of employer and employee did not exist between the parties, and that there was no liability on its part as an insurer under the Compensation Act. The court in its opinion says:

"This contention in our opinion is foreclosed against appellant by the ruling of Judge Stayton in [Houston & T. C.] Railway Co. v. Rider, 62 Tex. 267. In that case Rider and the engineer of a train were fellow servants. The former was injured through the latter's negligence * * *. The work the parties were engaged in at the time the accident occurred was being done on Sunday. * * *

"Rider sought to avoid the force of the fellow-servant doctrine upon the theory that the relation of fellow servants between himself and the engineer did not exist because they were performing labor in violation of the Sunday Law. Judge Stayton said:

" 'That this was on Sunday did not change the relation which existed between the engineer on the train and the plaintiff. They were fellow servants, nevertheless, in view of the rule which affects the question of master's liability, even if the work in which they were engaged was not such as the law permits to be done on that day.' * * *

"The principle upon which recovery is allowed in such cases is thus stated by Judge Cooley:

" 'Where the violation of law is merely a condition and not a contributory cause of the injury, a recovery may be had.' * * * It has been often held in this state that negligence of a plaintiff because of a violation of a statute or ordinance will not bar his right of recovery in an action for personal injuries unless such negligence was a proximate cause of the injury (Keevil v. Ponsford [Tex.Civ.App.] 173 S.W. 518, and cases there cited), and we see no reason why the same rule should not apply in a personal injury suit at common law by an employee against his master, where the latter sets up that the servant was laboring in violation of the Sunday law. We think if the present action could be maintained at common law by Tabor against the Fulwiler Motor Company, the latter could not defend upon the ground that at the time Tabor was injured he was laboring in violation of the Sunday law, unless it was further shown that this was a proximate cause of the injury."

In the case of St. Louis, B. & M. Ry. Co. v. Price, 269 S.W. 422, opinion adopted by the Supreme Court, it is held that while it is true the violation of a statute is negligence, it is equally true that such negligence must be the proximate cause of the injury before it will preclude recovery. This is well settled in the recent opinion of our Supreme Court, speaking through Justice Greenwood, in the case of Waterman Lumber Company v. Beatty, 110 Tex. 225, 218 S.W. 363.

Our courts have uniformly held that an agreement to perform certain work on Sunday is illegal and cannot be maintained. It is the rule, however, that if a party can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear, and may be important as explanatory of other facts in the case, he may recover.

■ Appellant challenges the findings of the jury to the effect that said sausage became contaminated to such an extent as to become unfit for human food during the time it was being manufactured by defendant; that the sausage was in such contaminated condition at the time it was delivered to the retail dealer, and that the eating of the sausage was a proximate cause of appellees' illness.

It bases this contention on appellant's evidence that it had at all times used the latest methods in its plants to prevent its products from becoming contaminated by impurities. It contended that meats that went into its products had been inspected by United States Government authorities and that it had complied with all federal government regulations with reference to manufacturing, inspecting, and shipping them.

The question raised here was presented in the case of Coca-Cola Bottling Co. v. Smith, Tex.Civ.App., 97 S.W.2d 761, 765, supra. In this case the court, in discussing the sufficiency of the evidence to sustain a finding that a cockroach found in a bottle of Coca-Cola got into the bottle during the process of manufacturing and bottling the product, says: "In view of plaintiffs' inability to prove just how the cockroach happened to be in the bottle of coca-cola and the superior knowledge of defendant as to the process employed to manufacture and bottle the beverage, and its manifest inability to produce a witness to testify just how this particular bottle of the beverage was cleaned before it was filled, we believe plaintiffs were entitled to invoke the rule of res ipsa loquitur."

In the case of Swift & Co. v. Blackwell, 4 Cir., 84 F.2d 130, a party was injured by swallowing broken fragments of glass found in a can of milk. It was held proper for the court to submit to the jury an issue as to whether the glass was in the can when it was sealed in the factory or was placed there after the can was opened, although the testimony to the effect that there was no possibility of the glass getting into the can during the process of manufacture was uncontroverted.

The courts of this state have never subscribed to the doctrine that a manufacturer, by introducing testimony to the effect that it had used the latest methods of processing its products, and the most approved methods of inspection, will be, as a matter of law, free of liability for injury caused by their use.

The rule is laid down in Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S.W. 527, and the cases cited, that testimony showing that reasonable precautions had been taken and that devices such as are customarily used with good results had been employed, will be admitted to be considered by the jury as any other testimony in the case, but this evidence will not be conclusive of defendant's contention. Fort Worth & D. C. Railway Co. v. Gatewood, Tex.Civ.App., 185 S.W. 932; Skelton &

Wear v. Wolfe, Tex.Civ.App., 200 S.W. 901; Magnolia Paper Co. v. Duffy, Tex. Civ.App., 176 S.W. 89, 90.

Appellant pleads as a defense the act of Congress of the United States known as Title 21 U.S.C.A., Section 71 thereof. It contends that the United States Government in such act had set up a complete standard of the care required in the manufacture of meat products to be shipped in interstate commerce; and that it had complied with this standard of care in the manufacture and inspection of its products; and that therefore it cannot be held responsible for an injury received by the ultimate consumer of such products on account of any poisonous or impure substance found therein.

The courts of the State of Pennsylvania in the case of Catani v. Swift & Co., 251 Pa. 52, 95 A. 931, L.R.A.1917B, 1272, Id., 241 U.S. 690, 36 S.Ct. 554, 60 L.Ed. 1238, have held, in passing on this identical question, that it is no defense that federal officers had inspected and approved meat under Title 21, Section 71, U.S.C.A.

For the above reasons, the judgment of the trial court will be in all things affirmed.

Affirmed.