McCALEB, Justice.
Plaintiff, alleging that she became ill as a consequence of consuming part of the contents of a bottle of Coca-Cola which contained a decomposed housefly, brought this suit for damages against Louisiana Coca-Cola Bottling Company, the manufacturer and distributor of the beverage.
Defendant denied generally the charges of the petition. However, it admitted that it bottles and dispenses the soft drink and, for. further answer, averred that, because of the modern methods employed in the bottling process at its plant, it is almost impossible for any foreign substance to enter the bottle or its contents before it is capped and made ready for consumption by the public. It also pleaded that, if the beverage consumed by plaintiff contained a housefly, it was not in the bottle when it left its plant and was delivered to the dealer.
Following a trial on these issues, there was judgment in the district court in favor of plaintiff for $300 damages. Defendant' then appealed to the 'Court of Appeal where the judgment was reversed and the suit dismissed on the sole ground that, since plaintiff did not tender independent proof showing that the bottle containing the deleterious ingredient had not been tampered with or improperly handled after it left defendant’s possession, she had failed to make out a prima facie case of fault on its part. In reaching this conclusion, a majority of the court[1] declared that, in this type of damage suit, plaintiff is required to prove that the foreign substance was contained in the bottle; that he suffered injury by reason of its presence therein and that the bottle had not been tampered with after it left the defendant’s possession. See SS So.2d 7. And *924 the majority further deduced that this court, in its recent opinion in Mayerhefer v. Louisiana Coca-Cola Bottling Co., 219 La. 320, 52 So.2d 866, had subscribed to this view. Doubting the validity of these resolutions, we granted certiorari.
At the outset, it is apt to observe that, whereas the ruling under scrutiny finds support in the decisions of the Courts of Appeal cited in the opinion[2] there are two other cases, previously decided by that Court (Orleans Appeal) and not referred to in its decision, which are in direct contrast with the view it adopted. Those cases are Hill v. Louisiana Coca-Cola Bottling Co., La. App., 170 So. 45 and Dye v. American Beverage Co., La.App., 194 So. 438, 440.
In the Dye case it was stated that:
“ * * * where the plaintiff shows by a preponderance of evidence that the beverage contained a foreign substance, that he consumed it and suffered injuries as a result, the burden of proof shifts to the defendant to excuse itself from liability by proving to the satisfaction of the court that the foreign matter did not enter the beverage during the bottling or manufacturing process.”
The ruling in the Dye case is predicated, of course, on the assumption that the plaintiff has shown that he purchased the beverage in its original container, a capped and airtight bottle for- — obviously, without such proof there is no occasion to indulge in any sort of presumption. But, when it is shown that there was nothing unusual about the bottle and that it was in apparent good condition at the time plaintiff uncapped it, it •is logical to infer that it had not been mishandled or its contents disturbed after it left the manufacturer’s plant for distribution. Accordingly, when, under such circumstances, plaintiff proves that the beverage contains unwholesome matter and that he sustained injury from its consumption, he establishes a prima facie case for the assessment of damages.
It is to be borne in mind in these cases that the defendant company is engaged in the business of distributing its beverages to the public in sealed containers or capped bottles and that, by the very nature of its enterprise, it represents, we think, by advertisements extolling the quality of its product, that it is fit for human consumption and free from deleterious matter. And, while there is not a direct contract to this effect between the consuming, public and *926 the manufacturer (as it distributes to retailers or middlemen who in turn sell to the consumer), it is fair to imply that, since the manufacturer, in marketing its products in capped bottles, intends them to reach the consumer in the same, condition in which they leave the factory, a warranty of wholesomeness exists between it and the consumer. Therefore, it is difficult to discern why a plaintiff, suffering illness as the result of consuming, deleterious matter contained in a bottled beverage, should shoulder the burden of establishing a negative fact by producing the middleman, or others if need be, to show that no one handling the bottle after it left the defendant’s plant removed the cap and permitted foreign substances to enter its contents. Properly, since proof of tampering by others would provide an avenue of escape from liability, it would seem to be a matter of defense.
The holding of the Court of Appeal is apparently founded on the idea that, without proof negativing mishandling by others, the doctrine of res ipsa loquitur cannot be invoked. But this theory does not rest on a reasonable basis; it stems from an erroneous assimilation of this type of case to those actions for damages resulting from an exploding bottle of carbonated beverage, Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 77, and from leakage of drums of acid, Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441. In that class of cases, the plaintiff, seeking the benefit of res ipsa loquitur, must establish, as a condition precedent to its application, that everyone through whose hands the instrumentality passed after it left the manufacturer did not mishandle or disturb it in any way which might, perchance, have contributed to the injury. ' This is because res ipsa loquitur does not ordinarily apply when the instrumentality causing the damage is not under defendant’s immediate control.
But, as stated in the opinion in Mayerhefer v. Louisiana Coca-Cola Bottling Co., supra, the rule obtaining in those matters is not relevent in an action for damages resulting from the consumption of deleterious ingredients contained in a bottled beverage. The reason is that a case of this sort is, in its essence, grounded upon the manufacturer’s failure to comply with the warranty of wholesomeness resulting from the sale and distribution of its foods or beverages for consumption by the public in the original package or sealed containers. The plaintiffs in the explosion cases depend entirely upon the law of negligence' for recovery; the plaintiff in this case is entitled to rely on defendant’s implied warranty that its product is safe for human consumption.[3] Doyle v. Fuerst & Kraemer, 129 La. 838, 56 *928 So. 906, 40 L.R.A.,N.S., 480; Costello v. Morrison Cafeteria Co. of Louisiana, 18 La.App. 40, 135 So. 245; MacLehan v. Loft Candy Stores, La.App., 172 So. 367; Hill v. Louisiana Coca-Cola Bottling Co. and Dye v. American Beverage Co., supra.
Turning now to tlie evidence in the case, it is shown that plaintiffs friend, a Mrs. Creath, purchased two bottles of Coca-Cola from K. & S. Grocery, which is located across the street from plaintiff’s residence in Algiers (Fifth Municipal District of New *930 Orleans), and brought them to plaintiff’s home. They were there opened and plaintiff and her friend began drinking the beverage out of the bottles. Plaintiff says that, when she consumed about half of her bottle, she felt a slimy substance in her mouth which she spat into her hand and then put back into the bottle, which she corked. Shortly thereafter, she became nauseated and vomited, the nausea and indisposition continuing for a couple of days. Her testimony as to the occurrence is corroborated by Mrs. Creath and her husband supports her statement concerning her illness. According to a chemical analysis, it was shown that the contents of the bottle contained a deteriorated housefly.
The only evidence offered by defendant is to the effect that its plant is equipped with modern machinery and that, in view of the sanitary methods it employed in bottling the beverage, there is only a slight possibility that the foreign matter could have entered the bottle.
Thus, a question of fact was presented for determination. The trial judge accepted the testimony of plaintiff and her witnesses as genuine. From our examination of the evidence, -we cannot say that he was manifestly wrong in his conclusion and therefore the award in plaintiff’s favor should not have been disturbed.
For the foregoing reasons, the judgment of the Court of Appeal is reversed and it is now ordered that the judgment of the district court be and it is reinstated and affirmed. Defendant is.to pay all costs.
HAMITER, J., concurs in the results.
HAWTHORNE, J., dissents and assigns written reasons.
LE BLANC, J., concurs and files written reasons.

. Began, J. took issue with the majority view in a separate opinion. See 55 So.2d 7, 9.

. Jenkins v. Bogalusa Coca-Cola Bottling Co., La.App., 1 So.2d 426; White v. Coca-Cola Bottling Co., La.App., 16 So.2d 579; Rowton v. Ruston Coca-Cola Bottling Co., La.App., 17 So.2d 851; Camp v. Homer Coca-Cola Bottling Co., La.App., 20 So. 2d 186; Mayerhefer v. Louisiana Coca-Cola Bottling Co., Ltd., La.App., 45 So. 2d 442; Nichols v. Louisiana Coca-Cola Bottling Co. Ltd., La.App., 46 So.2d 695 and Day v. Hammond Coca-Cola Bottling Co., La.App., 53 So.2d 447.

. There is'a divergence of opinion among the State courts' as to whether a manufacturer’s liability in cases of this kind is predicated upon negligence or an implied warranty. In 22 Am.Jur. “Food” § 105, it is stated that, according to the weight of authority, the basis of liability of the manufacturer is negligence but it is recognized therein that there are respectable and strong opinions grounding the liabil *928 ity upon an implied warranty of wholosomeness of the product, notwithstanding the absence of any privity of contract. This, we think, is the bettor view which finds support in most of the latest cases on the subject. See Annotation 111 A. L.R.. at page 1251, under the sub-heading “Liability on theory of implied warranty” citing Nemela v. Coca-Cola Bottling Co., Mo.App., 104 S.W.2d 773 and Coca-Cola Bottling Co. v. Smith, Tex.Civ.App., 97 S.W.2d 761, also subsequent annotation under same sub-heading in 142 A.L.R. pages 1494 and 1495, which follows a report of the decision of the Texas Supreme Court in Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, wherein a full discussion of the authorities on this matter is to be found.
The annotation in 142 A.L.R. declares, in substance, that, whereas there is a definite conflict of authority upon the question of the existence of an implied warranty in this type of action “ * * * several recent cases have indicated a tendency to extend the theory of implied warranty or the analagous rule of public policy so as to allow the maintenance of such an action independently of negligence or of the traditional views as to the necessity of privity of contract. Some of this type of cases hold that the requirement of privity is satisfied by modern trade practices giving rise to general knowledge, chargeable to the manufacturer or processor, that middlemen do not purchase for their own consumption, but for the purpose of immediate release of the products to the public through the channels of retail trade.”
The reason for imposition of liability on violation of an implied warranty is well stated by the Texas Court of Civil Appeals in Coca-Cola Bottling Co. v. Smith, supra, 97 S.W.2d 767, as follows: “ * * * Manifestly, the Coca-Cola Company, defendant in this suit, manufactured and sold the same to the retailer, not for consumption by the latter, but to be consumed by an ultimate purchaser from the retailer. And the implied representation that it was wholesome and free of deleterious substances was intended to induce the consumer to purchase it, the same as advertisements of. the qualities of such' a beverage carried in the press and posted on the highways which are commonly resorted to by manufacturers of such articles. And since such representations were made to-induce the ultimate purchase of the beverage from the retailer, it should follow that the defendant’s implied warranty to the retailer who purchased from it with knowledge and intention on the part of the defendant that the beverage would be sold and consumed by a purchaser from the retailer ran with the article and inured to the benefit of the plaintiff who purchased from the dealer.”