70 So.2d 409 (1954)
MILLER et ux.
v.
LOUISIANA COCA-COLA BOTTLING CO., Ltd.
No. 19990.
Court of Appeal of Louisiana, Orleans.
February 15, 1954.
*410 Hermann J. Schulze, May & Carrere, Edward F. Stauss, Jr., New Orleans, for appellant.
Gordon Boswell and Stanley E. Loeb, New Orleans, for appellees.
Before McBRIDE and REGAN, JJ., and WALTER HAMLIN, Judge ad Hoc.
REGAN, Judge.
The plaintiffs, Frederick T. Miller, and his wife, Mrs. Enola Clair Miller, asserting that Mrs. Miller suffered a severe illness as a result of consuming a portion of the contents of a bottle of coca-cola containing a deleterious substance which, upon analysis thereof, was revealed to be a chemical known as paint or a paint product, brought this suit against defendant, the Louisiana Coca-Cola Bottling Company, Ltd., endeavoring to recover $1500.00 as damages for personal injuries to Mrs. Miller and $75.00 for medical expenses incurred by Mr. Miller by virtue of Mrs. Miller's illness.
Defendant answered denying the allegations of the petition and pleaded as a special defense that its plant is equipped with the most modern and scientific machinery for the purpose of bottling its product, therefore, defendant insists that it is a physical impossibility for any foreign substance to find its way into the coca-cola or into the bottles and, if the plaintiff was injured as alleged, then defendants aver that the foreign substance was not in the bottle of coca-cola when it left its plant and when it was delivered to the dealer; and that if any paint or by-product thereof was present in the bottle, this occurred only after the bottle had passed into the possession of third parties and was, therefore, beyond the control of the defendant.
From a judgment in favor of Mrs. Miller in the sum of $600.00 and in favor of Mr. Miller in the amount of $55.00, defendant prosecutes this appeal.
The record reveals these categorical facts: the defendant, Louisiana Coca-Cola Bottling Company, Ltd., supplied its bottled product to Blanda's Food Store. The retail merchant delivered, among others, the bottle of coca-cola to the residence of Mrs. J. L. Helwick which had not been opened or tampered with by the merchant prior to delivery to the customer; and that Mrs. Helwick placed the bottle in her refrigerator. Mrs. Miller, her daughter and one of the plaintiffs herein, while visiting at the home of her mother on April 26th, 1950, at about one p. m. removed the coca-cola from her mother's refrigerator; the bottle was full, the cap was tight, thereupon she opened it and drank from the bottle. She was instantly conscious of an oily taste and a burning sensation as she swallowed a portion thereof. Thereafter, a state of anxiety developed and she telephoned the proprietor of Blanda's Food Store to tell of what had occurred. She was advised that he could do nothing. She then telephoned the defendant and was informed that they would send someone to see her. Between these calls she became ill and experienced nausea, later vomited and developed diarrhea accompanied by abdominal pains. She was attended by a physician, Dr. Calvin M. Johnson, who administered an emetic to produce vomiting, a hypodermic to relieve the abdominal pain and quieted her with a sedative. She was confined to her home for seven or eight days, two or three of which she remained in bed and was discharged *411 about a month later from the care of her physician.
Dr. Johnson's diagnosis was gastro enteritis for which appropriate medication was prescribed in the form of sedation, rest and diet.
Mrs. Miller's testimony is supported by that of her mother, her sister, Miss Myrtis Helwick, and her sister-in-law, Mrs. Numa Helwick.
The record contains a stipulation by respective counsel to the effect that if Cecil Shilstone, John M. Danneker and Cassius L. Clay were present in court, that they would identify their respective chemical analysis of the remaining contents of the bottle of coca-cola and testify in conformity therewith.
The Suilstone Testing Laboratory's certificate of analysis, dated April 27, 1950, the day after the incident occurred, made for Miss Myrtis Helwick, stated:
"A preliminary examination of the contents of this Coca-Cola bottle revealed, in our opinion, the presence of a paint or paint product.
"It is recommended that a detailed investigation be authorized to establish a more quantitative and specific examination for contaminant identification."
Cassius L. Clay, Director Division of Food & Drugs of the State of Louisiana, submitted to Dr. Johnson a report dated May 26th, 1950, on an opened bottle of coca-cola received from Mrs. Enola Miller, which reads as follows:
 "Condition: White, opaque, resinous
 film in the bottom.
 "Volume (Total) - 150 ml
 "Lead - Positive
 "Calcium - None
 "Titanium - Positive
 "Conclusion: This is evidently a residue
 of white paint in the bottle."
Danneker & Evans, Inc. submitted a certificate of analysis, dated December 5, 1950, of the remaining contents of this bottle of coca-cola, "received from Mrs. Frederick T. Miller October 12, 1950, for Louisiana Coca-Cola Bottling Co.," which analysis revealed:
"The liquid contents of the bottle measured 142 c.c. or approximately 4.8 fluid ounces.
"The color of the sample was normal for Coca-Cola but the odor was characteristic of paint.
"Solid foreign material present in the sample and adhering to the bottom and side of the interior of the bottle was found to be a film of dried oil and some white particles which appeared to be paint pigment.
"Quantitative tests for lead in the liquid contents of the bottle gave faintly positive reactions, indicating only a trace of lead present. Tests for lead in the solid material of the sample were positive. The quantity of lead in the solid material was found to be 8 milligrams or .12 grain."
Dr. Johnson testified that he visited Mrs. Miller on April 26th, 1950, about one hour after she had consumed a portion of the contents of the bottle of coca-cola; that he examined the bottle and "observed it had * * * a paint-like odor and there seemed to be some visible residue of oil material in the bottle, that was settled at the bottom."
The only questions posed for our consideration by virtue of the pleadings and the evidence adduced herein are ones of fact. They aredid the bottle from which the plaintiff drank the coca-cola contain a foreign matter and if it did, was plaintiff injured as a result thereof?
The trial judge answered these questions in the affirmative and after a careful analysis of the record we are in full accord with his conclusions.
The relatively recent case of Le-Blanc v. Louisiana Coca-Cola Bottling Co., Ltd., 1952, 221 La. 919, 60 So.2d 873, 874, is apposite and controlling. In that case the Supreme Court was of the opinion:

*412 "* * * when it is shown that there was nothing unusual about the bottle and that it was in apparent good condition at the time plaintiff uncapped it, it is logical to infer that it had not been mishandled or its contents disturbed after it left the manufacturer's plant for distribution. Accordingly, when, under such circumstances, plaintiff proves that the beverage contains unwholesome matter and that he sustained injury from its consumption, he establishes a prima facie case for the assessment of damages.
"It is to be borne in mind in these cases that the defendant company is engaged in the business of distributing its beverages to the public in sealed containers or capped bottles and that, by the very nature of its enterprise, it represents, we think, by advertisements extolling the quality of its product, that it is fit for human consumption and free from deleterious matter. And, while there is not a direct contract to this effect between the consuming public and the manufacturer (as it distributes to retailers or middlemen who in turn sell to the consumer), it is fair to imply that, since the manufacturer, in marketing its products in capped bottles, intends them to reach the consumer in the same condition in which they leave the factory, a warranty of wholesomeness exists between it and the consumer."
The trial judge awarded Mrs. Miller the sum of $600.00 for injuries resulting from the consumption of a portion of the contents of a contaminated bottle of coca-cola and Mr. Miller $55.00 for medical expenses.
In Mayerhefer v. Louisiana Coca-Cola Bottling Co., Ltd., 219 La. 320, 52 So. 2d 866, the plaintiff therein suffered substantially the same injuries incurred by Mrs. Miller and the Supreme Court was of the opinion that an award of $500.00 for pain and suffering, in addition to medical expenses, was adequate, accordingly, we are of the opinion that the judgment of the trial court for personal injuries incurred by Mrs. Miller should be decreased from the sum of $600.00 to $500.00.
For the reasons assigned the judgment appealed from is amended so as to reduce the amount awarded Mrs. Enola Miller from the sum of $600.00 to the sum of $500.00 and, as thus amended, it is affirmed. Defendant to pay all costs.
Amended and affirmed.
JANVIER, J., takes no part.