Mrs. Rosetta Jenkins seeks to recover damages in the sum of $5,000 from the Bogalusa Coca Cola Bottling Company, Ltd. (hereafter called the company) and its insurance carrier, Hartford Accident Indemnity Company, on account of mental anguish, suffering, injury to her health and loss of time which she alleges was caused from drinking decayed parts of a spider or other deleterious foreign substance in a bottle of coca cola manufactured by the company and sold to her and her husband by the City Drug Store of Bogalusa on July 24, 1939. Her husband sues for $100 medical expenses incurred by him in treating his wife for the illness which he alleges resulted from drinking said deleterious foreign substance in said bottle of coca cola.
Plaintiffs allege that they purchased two bottles of coca cola from the City Drug Store, and said bottles were opened by an employee of said drug store who placed a straw in them and handed a bottle to Mrs. Jenkins and one to her husband; that each of them began to drink said coca cola through said straw, and when Mrs. Jenkins took the first swallow she became deathly sick; that she sought some place to vomit and was shown to a rest room where she vomited and became so weak that she had to be assisted in getting about; that she was taken to the office of Dr. Ward on the second floor of the drug store building where she was treated by this doctor for several hours before she could go home; that she suffered for several weeks as a result of this illness and was treated by Dr. Ward. She further alleges that while she was in the office of Dr. Ward, he examined the contents of the bottle from which she had drunk the coca cola and found a foreign substance therein which appeared to be a spider, and which foreign substance was the direct and sole cause of her desperate illness. The allegation is also made that the bottle of coca cola was purchased by the said drug store *Page 427 
from the defendant company and it had not been opened or tampered with since leaving the plant of the manufacturer; that the said bottle of coca cola was negligently manufactured, bottled and handled by said company, the particular acts of negligence not being alleged as they constitute a case of res ipsa loquitur.
Defendants admit that plaintiffs purchased the bottles from the City Drug Store and that these bottles were manufactured and bottled by the company, and they admit that plaintiffs drank from these bottles as alleged; but they deny that there was any foreign substance in said bottle from which Mrs. Jenkins drank; deny that she was made ill from drinking anything in said bottle, and deny that there was any deleterious foreign substance in said bottle when it left the company's plant, and aver that if there was any foreign substance in said bottle, it was placed there by some third person after the bottle left its plant. It is also alleged in the answer that said coca cola was bottled by the most modern and scientific process and with the greatest care and by the use of the most modern machinery, and for this reason it was impossible for a foreign substance to get in this bottle during the process of manufacturing.
The trial judge rendered a judgment in favor of the defendants, rejecting the demands of the plaintiffs, and they have appealed.
In the recent case of Auzenne v. Gulf Public Service Company, La.App., 181 So. 54, 56, we said:
"Our courts recognize the right of a plaintiff to invoke the doctrine of res ipsa loquitur where suit is brought against the manufacturer or dispenser of foods and beverages for damages resulting from the use and consumption of deleterious and unwholesome foods and beverages manufactured and dispensed for public use and consumption, for the reason that the manufacturer and dispenser are in a better position to know the condition of the product manufactured and sold than the consumer. In such a case the petition is good if it merely alleges negligence on the part of the manufacturer and dispenser in general terms."
Before the plaintiffs can invoke the doctrine of res ipsa loquitur and recover in this case, they must prove with legal and reasonable certainty the following three principal facts: (1) that the bottle of coca cola from which Mrs. Jenkins drank contained parts of a disintegrated spider or other foreign substance at the time she drank from the bottle; (2) that the foreign substance did not get in the bottle after it left the manufacturing plant of the company; and (3) that she drank or swallowed some of this foreign substance and it made her sick.
Assuming that plaintiffs have proved with sufficient certainty the first two sets of facts (and we doubt if these necessary facts have been proved with sufficient certainty) we agree with the trial judge that they have not sufficiently proven that Mrs. Jenkins drank or swallowed anything from the bottle that caused her to become suddenly ill.
In her petition Mrs. Jenkins alleges that she got deathly sick when she took the first swallow from the bottle through the straw, yet in her testimony she says she became deathly sick after sipping two or three or four swallows; that her husband asked her if it was not something she had eaten for breakfast that made her sick, to which she replied that she had eaten no breakfast (a fact which it seems the husband should have known); that she told him it was the coca cola that was making her sick, yet she took another drink after telling her husband that she thought it was the coca cola that was making her sick. Her husband took her to the rest room where she vomited, yet neither she nor her husband told any employee in the drug store that the bottle had something in it which had made her sick.
Her husband took her upstairs to see Dr. Ward and he took the bottle of coca cola with him. She says her husband wanted her to drink some more of the coca cola after she got to Dr. Ward's office to settle her stomach, yet both of them just a short time previous had discussed downstairs the possibility that the coca cola which she had drunk out of this same bottle was the very thing that was making her sick.
Dr. Ward testified that he examined Mrs. Jenkins shortly after she came upstairs and found rigidity of her abdominal muscles, raising of her eyebrows and nausea. Jenkins and his wife, without being asked by the doctor, told him that they had been drinking coca cola. This shows clearly that they then suspected that the coca cola had caused Mrs. Jenkins' illness, *Page 428 
or else they wanted Dr. Ward to suspect this as a cause, and yet, despite this knowledge on their part, the husband was insisting on his wife drinking more of this coca cola to settle her stomach. Some thirty minutes after Jenkins and his wife had been in the doctor's office (during all of which time the bottle had been in the possession of Mr. Jenkins and had been uncapped since it was first opened in the drug store) Dr. Ward poured out the contents of the bottle into a pan and found what to him looked like portions of two disintegrated spiders which appeared to have been in the bottle for some time.
While Dr. Ward described Mrs. Jenkins' symptoms as those of a spider bite, except for the vomiting, he could not say that her illness was caused from anything she drank from the bottle nor from any poisonous substance. He expressed the opinion that a person could absorb poison by swallowing a spider, yet he was not sure of this as he had had no experience along that line. Mr. C.L. Clay, a toxicologist employed by the State Health Department, testified that, in his opinion, the swallowing of part of a spider would not cause the symptoms which Mrs. Jenkins had; that the poison or venom of a spider, if swallowed, would be digested as other food and would not get into the circulatory system unless there was some cut or abrasion in the mouth, throat or stomach through which it could be absorbed.
Another significant circumstance is that Mrs. Jenkins claims to have gotten deathly sick after drinking two or three swallows from the bottle. She never drank over one-sixth of the contents of the bottle and that was through a straw which acted as a kind of sieve to prevent her from drawing in but the tinest particles of any foreign substance that might have been in the bottle. It hardly seems reasonable that this small quantity of liquid could have contained sufficient poison to cause the illness which Mrs. Jenkins suffered so suddenly.
The law in this state makes the manufacturer and dispenser of foods and drinks practically an insurer of the wholesomeness of the concoction which he prepares and sells, and as he has the burden shifted to him under the res ipsa loquitur doctrine of proving that no injurious ingredients entered into such foods and drinks during the manufacturing process, where it is shown that a person is made ill by the consumption of such food and drink, it is proper that the facts necessary to place the responsibility for the deleterious substance at the door of the manufacturer or dispenser should be proven by clear and convincing evidence. Dean v. Alexandria Coca-Cola Bottling Co., Inc., La.App., 148 So. 448; Russo v. Louisiana Coca-Cola Bottling Company, La.App., 161 So. 909; Hill v. Louisiana Coca-Cola Bottling Co., La.App., 170 So. 45.
The trial judge has supported his finding of facts by a clear and well considered opinion, and we not only fail to find any manifest error in his conclusions, but we fully concur in them.
For the reasons assigned, the judgment is affirmed.