45 So.2d 442 (1950)
MAYERHEFER
v.
LOUISIANA COCA-COLA BOTTLING CO., LTD., et al.
No. 19390.
Court of Appeal of Louisiana, Orleans.
March 27, 1950.
Marion G. Seeber, New Orleans, for appellant.
Frank T. Doyle and Nicholas Masters, New Orleans, for appellees.
REGAN, Judge.
The plaintiff, Joseph M. Mayerhefer, claiming that he suffered a severe illness as a result of consuming about one-half the contents of a bottle of coca-cola which contained a deleterious substance which, upon on analysis was revealed to be a chemical known as iodine, brought this suit against the Louisiana Coca-Cola Bottling Company, Ltd., and its liability insurer, Hartford Accident and Indemnity Company, for the recovery of damages in the sum of $2,611.50.
Defendants answered denying the allegations of the petition and pleaded as a special defense that the Louisiana Coca-Cola Bottling Company's plant is equipped with the most modern and scientific machinery for the purpose of bottling its product, therefore, defendants maintain that it is a physical impossibility for any foreign substance to find its way into the coca-cola or into the bottles and, if the plaintiff was injured as alleged, then defendants aver that said foreign substance was not in the bottle of coca-cola when it left its plant and when it was delivered to the dealer; and that if any iodine was present in the bottle, this occurred only after the bottle had passed into the possession of third parties and was, therefore, beyond the control of the defendants.
From a judgment in favor of defendants dismissing plaintiff's suit, plaintiff prosecutes this appeal.
*443 The record reveals that under date of Thursday, September 18, 1947, at about 11:30 p. m., the plaintiff, endeavoring to relieve a headache, purchased two bottles of coca-cola from a neighborhood vendor of the product, designated as "Johnny's Pool Room," located in 2025 N. Claiborne Avenue and returned to his home in 2009 N. Claiborne Avenue, took a headache powder, opened one of the bottles of coca-cola and swallowed about one-half of the contents thereof. Plaintiff, moments later, suffered an intense irritation and burning sensation of his throat and stomach causing retching and regurgitation. Upon examination of the bottle he detected that the beverage had a peculiar taste and odor. The incident occurred near midnight and the plaintiff's daughter being concerned over her father's illness, summoned his brother, Adolph Mayerhefer, a police detective, to his home. The brother, shortly after his arrival and after consummating the usual arrangements, conveyed plaintiff to the Hotel Dieu where he was examined and treated by Dr. R. E. Gillaspie, the family physician. Dr. Gillaspie's diagnosis was acute gastro enteritis for which appropriate medication was prescribed in the form of sedation, rest and diet. Plaintiff was confined to the hospital until September 20th, 1947. The manifestations of the same ailment recurred five days later ostensibly from the same cause and, on September 25th, plaintiff was conveyed from his place of employment to the Charity Hospital and from there to the Hotel Dieu, where he remained until September 27th, under the care of Dr. Gillaspie. The same diagnosis was made and similar treatment prescribed as on the occasion of his first visit to the hospital.
Dr. Gillaspie testified that his examination revealed pain and tenderness in the mid-abdominal region; that plaintiff's blood pressure was within normal limits, but that plaintiff was retching and vomiting. He further testified that the plaintiff informed him that he had drunk some coca-cola about one-half hour or forty-five minutes prior to the first examination and that it had a peculiar odor and taste to it and in order to alleviate the pain which plaintiff suffered, he administered morphine and demerol; that plaintiff was confined to the hospital for a period of two days; he had occasion to see plaintiff again on September 25th, at the Hotel Dieu and he was in the same condition as on the previous occasion, i. e., he was suffering pain in the mid-abdominal region and he again diagnosed plaintiff's illness as acute gastro enteritis. Dr. Gillaspie related that he had treated the plaintiff on several occasions prior to this illness and the condition of his health was good except for hypertension. He further testified that if plaintiff had actually ingested a coca-cola containing iodine that the symptoms would be comparable to the ones which plaintiff had manifested.
Adolph Mayerhefer, plaintiff's brother, corroborated plaintiff's testimony with respect to his suffering and regurgitating. He testified that shortly after arriving at plaintiff's home he had smelled the beverage and there was a peculiar odor emanating from the liquid which remained in the bottle from which his brother had consumed about one-half the contents, and that it was his idea to have the contents examined by the City Chemist. In pursuance thereof he made the necessary arrangements, through police channels, in order to facilitate the analysis and subsequent report; that he, personally, was unable to deliver the bottle to the City Chemist on the morning of the 19th of September, 1947, as he anticipated because he had to report for police duty. He then turned the bottle and its sealed contents over to his sister, Mrs. Verlander. She testified that she received the sealed bottle from her brother on the morning of September 19th, 1947, and that she locked it in her china closet where it remained under her exclusive custody and control for several days, due to the intervening hurricane of September 19th, 1947, which thus delayed delivery of the bottle in question to the City Chemist for an analysis.
Dr. John M. Danneker, the City Chemist, testified that his office received the contents of the coca-cola remaining in the bottle on September 26th, 1947, and his analysis revealed that "the bottle contained 61 c. cs. which is approximately 2.1 fluid ounces. The color of the sample was normal for *444 coca-cola, but the odor was characteristic of iodine and it gave positive results when tested. A quantitative examination was made which showed that there was .053% of free iodine in the sample which would be the equivalent of 94 milligrams of iodine in a six ounce bottle". On cross-examination Dr. Danneker testified as follows:
"Q. What is the average dose of iodine used for internal purposes? A. The iodine usually given internally is in the form of a solution, it is a compounded solution known as Lugol solution. The maximum dose of Lugol solution is ten drops or minims, which contains about 6/100 of a gram or 60 milligrams.
"Q. Now assuming that this plaintiff drank one-half of that bottle, how much more than the maximum dose of iodine would that be? A. About one and one-half times the maximum."
George John Virga, the son of the proprietor of "Johnny's Pool Room", testified that on the night of September 18th, 1947, he sold two unopened bottles of coca-cola to the plaintiff, which had originally been purchased in case lots from the Louisiana Coca-Cola Bottling Company, Ltd., and they had been contained in what he designated as a dry storage box used for the chilling of bottled beverages. He further testified that the bottles had not been tampered with from the time that his father had purchased them in case lots from the Louisiana Coca-Cola Bottling Company, through the time that he sold the two bottles to the plaintiff herein. He further testified that he had received no other complaints concerning the coca-colas which he had sold to various customers.
The only evidence introduced by the defendant which is worthy of note, is of a negative character. The defendants, through Charles C. Collins, Assistant Superintendent of the Louisiana Coca-Cola Bottling Company, explained in minute detail the method used in sterilizing, cleaning and filling the bottles; he testified that the plant is ultra modern and equipped with ample facilities intended to insure the purity and quality of this product when it reaches the ultimate consumer. The conclusion which defendants would have us draw from the testimony of Mr. Collins is that it would be impossible, in view of the abundant precautions taken, for a deleterious substance to be found in any bottle of coca-cola when it left the defendant's plant, however, Mr. Collins testified on cross-examination that foreign matter had been found in bottles of coca-cola and that it was part of the bottling process in defendant's plant to subject the bottles to a final light test for the purpose of discovering the presence of such foreign matter, the inspection being made by women employed for that specific purpose.
Counsel for plaintiff, in his brief, contends and endeavors to logically prove that the doctrine of res ipsa loquitur is applicable to the facts developed in this matter.
Defendants contend, on the other hand, that before the doctrine of res ipsa loquitur can become operative, certain factual requirements must be present, to-wit: (1) the plaintiff must show actual injury; (2) that the beverage contained a foreign ingredient that caused the injury and (3) that the bottle had not been improperly handled or tampered with after it left the bottler's possession, and that since plaintiff failed to comply with any of these requirements, he has not made out a prima facie case against the defendants and cannot, therefore, invoke the benefits of the doctrine. In the alternative, defendants maintain that assuming a prima facie case was actually made out by plaintiff, then certainly what has been proven concerning the method employed by the defendants in the bottling process, effectively negatives the existence of any negligence on the part of the defendant bottler which may have been inferred from the testimony adduced by the plaintiff.
The question posed by virtue of the pleadings and evidence adduced herein is solely one of fact, i. e., did the bottle from which the plaintiff drank the coca-cola, contain a foreign matter and, if it did, was plaintiff injured as a result thereof?
In Dye v. American Beverage Company, La.App., 194 So. 438, 440, this Court, through Judge McCaleb, observed that: *445 "We have many times said (see Hill v. Louisiana Coca-Cola Bottling Co., La.App., 170 So. 45, Russo v. Louisiana Coca-Cola Bottling Co., La.App., 161 So. 909, and other cases) that, where the plaintiff shows by a preponderance of evidence that the beverage contained a foreign substance, that he consumed it and suffered injuries as a result, the burden of proof shifts to the defendant to excuse itself from liability by proving to the satisfaction of the court that the foreign matter did not enter the beverage during the bottling or manufacturing process."
In our opinion the plaintiff has made out a prima facie case and he has proved, by a fair preponderance of the evidence, not only that the bottle of coca-cola, from which he drank, contained a deleterious substance, but that he was rendered ill as a direct result of its consumption. As a logical consequence thereof it was encumbent upon the defendants to show that the matter found in the bottle did not enter the bottle during the manufacturing process. The evidence submitted by defendants is to the effect that the defendant bottling company operates a most modern scientific and sanitary plant and that it is quite impossible that a foreign substance could have entered the product during the process of manufacture, but, the same evidence also revealed that after the bottles are filled defendants have employees to carefully examine each bottle through reflected light to ascertain if any deleterious substance is present therein. If it is impossible for any foreign substance to enter the bottle or to remain there while the bottle is processed through the washing and filling plant, it occurs to us that it would be a vain and unnecessary gesture to have employees to diligently observe the filled bottles passing through reflected light, patiently waiting for an impossible event to occur.
A fortiori the evidence submitted by defendants herein, is not of itself sufficient to offset the very positive testimony submitted by the plaintiff and his witnesses which, after careful scrutiny, we find to be worthy of belief and to authorize the conclusion that plaintiff was rendered ill as a result of the negligence of the beverage company.
The courts of this State have consistently held bottlers of beverages to a very high degree of care; yet, by the same token, the courts have borne in mind that the manufacturer of beverages, of necessity, can have at his disposal no adequate means of disproving by eyewitnesses that the alleged incident actually transpired. Therefore, safeguards have been erected and in order to establish his case the plaintiff must allege and prove three distinct factual requisites: Dye v. American Beverage Company, Inc., supra, (1) that the beverage contained a harmful substance, (2) that the plaintiff partook of the contents of the bottle and (3) that injury resulted. When these facts have been sufficiently established, the defendants then bear the burden of rebutting the prima facie case of negligence thus established against it by the plaintiff in order to escape liability. Auzenne v. Gulf Public Service Company, La. App., 181 So. 54.
We are of the opinion that plaintiff has established a prima facie case of negligence which the defendants have failed to rebut.
Plaintiff, an automobile paint sprayer, was ill for approximately one week. He claims that as a result of his indisposition he lost a week's earnings amounting to the sum of $44.00; that he paid his physician, Dr. Gillaspie, $39.00 for professional services and the Hotel Dieu the sum of $28.50, making a total of $111.50. These charges appear reasonable, were adequately proved and were not disputed by the defendants. In our opinion the record amply sustains plaintiff's contention that he suffered severe and agonizing abdominal pains incurred by virtue of having consumed one-half of the contents of a bottle of coca-cola containing iodine which resulted in severe acute gastro enteritis, accordingly, we are of the opinion that $500.00 is a reasonable award for his pain and suffering under the circumstances.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there *446 be judgment herein in favor of the plaintiff, Joseph M. Mayerhefer, and against the defendants, Louisiana Coca-Cola Bottling Company, Ltd., and Hartford Accident and Indemnity Company, in the sum of $611.50, with legal interest from judicial demand until paid and for all costs.
Reversed.