53 So.2d 447 (1951)
DAY
v.
HAMMOND COCA COLA BOTTLING CO.
No. 3424.
Court of Appeal of Louisiana. First Circuit.
June 29, 1951.
Frank T. Doyle, Nicholas Masters, New Orleans, Ben N. Tucker, Hammond, for appellant.
Edwin C. Schilling, Jr., Amite, for appellee.
DORÉ, Judge.
The plaintiff seeks to recover $3,045 from the Hammond Coca-Cola Bottling Company as damages resulting from her drinking part of a Coca-Cola that contained a mouse. She alleges that on or about January 22, 1949 she bought several bottles of Coca-Cola from the store of a Mr. Dan Allen in St. Helena Parish and at noon on the same day started to drink one of the beverages with her lunch; that with the first swallow she noticed a foul taste and on examination found a partially decomposed mouse in the bottle; that she immediately became ill, suffering violent nausea, abdominal cramps and vomiting, and was for several days unable to take food and suffered both physically and mentally. She alleged further that defendant is engaged in bottling and distributing beverage Coca-Cola in capped bottles through various retail *448 dealers in St. Helena Parish; that Mr. Dan Allen operates a retail store in St. Helena and sells Coca-Cola which is bottled and distributed by defendant, being delivered by trucks from Hammond, Louisiana, to his store; and that the direct cause of all her sickness was the decomposed mouse that was present in the bottle of Coca-Cola as a result of gross carelessness and negligence of defendant, its officers, agents, employees and servants.
At the trial plaintiff presented, in addition to her own testimony, two witnesses, Lloyd Drehr and H. E. Lea; and the testimony of Dr. Paul Jackson of Clinton, Louisiana, who treated plaintiff on the day after her unfortunate alleged experience, was taken by deposition.
Plaintiff testified that on January 22, 1949, about 10:00 A.M., she bought six bottles of Coca-Cola from Mr. Dan Allen's store, in the community of Tinus, St. Helena Parish, Louisiana, and carried them home and put four of them into the freezing unit of the frigidaire. About noon she sat down to lunch with her two girls, age 15 and 11, and intended to drink some of the cokes with lunch. As Mrs. Day opened and took a swallow of her coke the younger girl asked if it had ice in it, whereupon Mrs. Day shook the bottle, examined it, and said it had an awful taste. She then called for another bottle and poured out some of the coke from which she had drunk and saw that there was something foreign in the bottle. After that it was only a matter of seconds until she became nauseated and began vomiting. She was very sick for the rest of the day. But her husband wasn't home and didn't get home until night-time, and they had no telephone, so she had no medical attention that day. Next morning, however, her husband carried her to see Dr. Jackson at the Clinton infirmary. She was "pretty badly sick" for about a week and continued to suffer nausea for two or three weeks. The record is somewhat vague as to how long she suffered as a result of her experience.
Plaintiff carried the bottle with the mouse and Coca-Cola in it, to the infirmary with her and showed it to Dr. Jackson. She stated that she did not know, until Dr. Jackson saw it, whether the object was a mouse or a scorpion. On his suggestion that the bottle should be sent to the State Board of Health she left the bottle with him; but the bottle apparently remained at the infirmary and she picked it up again on her next visit. Some time later she and her father carried the bottle to Hammond and showed it to defendant's manager. Except for the time the bottle was left at the infirmary it remained in plaintiff's possession up to the time of the trial, when it was offered in evidence. At the present time the liquid in the bottle does not have the appearance of Coca-Cola, and, because of its deteriorated state, it is impossible to determine what the foreign substance in the bottle might have been.
Lloyd Drehr, a resident of Amite, testified that in September, 1949 he bought a Coca-Cola and found some hard foreign material in the bottle. His testimony was objected to, but the court let it in for the purpose of showing that it was possible for some foreign matter to get into bottled cokes.
H. E. Lea, a brother of plaintiff, was the third witness. He testified briefly to the effect that his first knowledge of his sister's experience came to him on the afternoon of the next day when his father came by and told him about it; that his sister has been under treatment of a doctor ever since she drank from the Coca-Cola; and that some three or four months before the trial she was given a blood transfusion. But he didn't know the reason for the transfusion except that she was run down.
Defendant also put on three witnesses. Walter Temple, production superintendent at defendant's plant, testified at length on the nature of the equipment used in the plant and the precautionary measures taken in bottling Coca-Cola. Leo Shelton, defendant's manager, testified that on February 9th Mrs. Day and her father visited him at the plant and showed him a Coca-Cola bottle with a mouse and some Coca-Cola in it; that the mouse was bloated but otherwise whole and intact. He denied that they made any demand on him at that time. The bottle was shown to him again *449 at the trial but then, because of the deteriorated condition of the mouse it wasn't possible to identify the object inside. He related how he and a Mr. Wendelken ran an experiment, sometime after the visit by Mrs. Day, by placing a recently killed mouse in a marked Coca-Cola bottle and then running the bottle through the plant's usual cleaning and filling process; he stated that when the bottle came out of the machine the mouse was gone.
Henry Wendelken, operator of a machine shop in Hammond, who was present at the experiment run by Mr. Shelton, substantiated Mr. Shelton's report on the experiment with the mouse in the bottle.
In such cases as this it is necessary for plaintiff, in order to recover, to rely on the doctrine of res ipsa loquitur, because obviously plaintiff isn't able to produce testimony of persons who witnessed the negligence by defendant that gave rise to the cause of action. The rule of res ipsa loquitur, which means literally, "the thing speaks for itself", was first applied only in instances where the thing that caused the damage was in the possession and under the control of the defendant. Am.Jur., vol. 38, Negligence, Sections 295, 300. But in this state and several others the doctrine has been extended to apply to some cases where the article causing the injury has left the possession and control of defendant, provided certain specific conditions are met by the plaintiff. The doctrine has been applied where canned foods contained harmful or deleterious substances, where bottles of carbonated beverages exploded, and where bottled beverages contained foreign and harmful substances.
In cases like the present, where the claim is that a bottled beverage contained some foreign and harmful substance, the plaintiff has been required to prove (1) that the beverage contained a foreign substance, (2) that actual damage was suffered by drinking of the beverage, and (3) that the bottle had not been tampered with after it left the bottler's possession. See Jenkins v. Bogalusa Coca-Cola Bottling Co., La.App.-1 1941, 1 So.2d 426; White v. Coca-Cola Bottling Co., La.App.-2, 1944, 16 So.2d 579; Rowton v. Ruston Coca-Cola Bottling Co., La.App.-2, 1944, 17 So.2d 851; Camp v. Homer Coca-Cola Bottling Co., La. App.-2, 1944, 20 So.2d 186; Mayerhefer v. Louisiana Coca-Cola Bottling Co., Ltd., La.App.-0, 1950, 45 So.2d 442, affirmed La. Sup., 52 So.2d 866; Nichols v. La. Coca-Cola Bottling Co., Ltd., La.App.-0, 1951, 46 So.2d 695.
Another requirement that has not always been expressly stated in the decisions has nevertheless always existed; it should be the first requirement in point of time, and is: that plaintiff prove that the beverage causing the damage was bottled and distributed by the defendant. Proof on this point has, of course, always been required in every case.
Plaintiff has cited and relies on the case of Dye v. American Beverage Co., La.App., 194 So. 438, 440, which said that "* * * where the plaintiff shows by a preponderance of evidence that the beverage contained a foreign substance, that he consumed it and suffered injuries as a result, the burden of proof shifts to the defendant to excuse itself from liability by proving to the saisfaction of the court that the foreign matter did not enter the beverage during the bottling or manufacturing process."
Plaintiff's argument is that it should not be necessary to prove that the bottle had not been tampered with after it left the bottler's possession. But the Dye case, as was said by the Supreme Court in Mayerhefer v. La. Coca-Cola Bottling Co. Ltd., supra: "A study of the Dye case, particularly the statement of facts therein contained, shows that the rationale of the whole opinion proceeded upon the assumption that that bottle had not been tampered with in the course of its journey from manufacturer-distributor to retailer to consumer."
The decision by the Orleans Court of Appeal in the Mayerhefer case, supra, might have left some doubt as to whether that court felt that the plaintiff had to meet the third requirement, to-wit, proving that the bottle had not been tampered with after it left the possession of the bottler. But the Supreme Court's decision in that case pointed out that the individual who had sold the *450 coke in question there testified that it had never been tampered with from the time of its purchase in a case lot from defendant bottling company to the time of its sale to the plaintiff. Further, the Supreme Court referred favorably to White v. Coca-Cola Bottling Co., supra, and Jenkins v. Bogalusa Coca-Cola Bottling Co., supra, in both of which cases the plaintiff was required to prove that the bottle had not been tampered with after delivery by the defendant. So it appears clear that the Supreme Court considered that requirement to have been met in the Mayerhefer case.
With these four established requirements in mind, an examination of the evidence in the present case shows that plaintiff has fallen far short of furnishing the proof necessary for recovery. Plaintiff testified that she bought the coke in question from Dan Allen's store. As to where Mr. Allen got the coke from, the only thing in the record is the following testimony by plaintiff:
"Q. What is your husband's occupation? A. Farming mostly. He works for the St. Helena Parish School Board part of the year.
"Q. Was he operating a store at this same time? A. No. He was working for a cousin that day, J. R. Day.
"Q. About how far away is Mr. Day's store from Mr. Allen's store? A. It must be about six or seven miles.
"Q. Does the same coke delivery man make both stops? A. That's right.
"Q. Do you and your husband know that delivery man personally or well enough to speak to him? A. Yes. I would help Mr. Day out at different times at this store, Mr. Schilling was the delivery man."
This does not prove at all that Mr. Allen got the coke from the bottling plant at Hammond rather than from a plant located elsewhereBaton Rouge, for instance.
On the question of how long this particular bottle of Coca-Cola had been at Mr. Allen's store or what might have taken place after it left the bottler's possession, plaintiff has offered no evidence whatever. Plaintiff and her husband both knew Mr. Allen, and both knew the delivery man whom plaintiff testified delivered cokes to Allen's store; but neither of them were called as witnesses. Further, the record contains only plaintiff's testimony as to when she bought the Coca-Cola in question, what transpired afterward, and what was found when the bottle was opened. This, in spite of the fact that her two daughters, age 15 and 11, were present when the bottle was opened and when plaintiff became so ill. When a point is in dispute and available witnesses are not called on to testify, a presumption is created that their testimony would not be favorable. Wicker v. Metropolitan Life Insurance Co., La.App., 189 So. 485; Greathouse v. Thomas, La.App., 15 So.2d 555. Such a presumption is not important here, however, for plaintiff has clearly failed to prove her case.
For these reasons the judgment of the lower court is reversed and judgment is rendered rejecting plaintiff's demands at her cost.