REGAN, Judge.
I respectfully concur. The facts adequately support the judgment rendered in this case. However, after reading the majority opinion I am persuaded to judicially observe the “third requirement” discussed therein.
Heine, once eloquently stated the position that the author finds himself in with respect to the concurring opinion — “we do not take possession of our ideas, but are possessed by them. They master us and force us into the arena, where, like gladiators, we must fight for them.”
The majority opinion states “whatever doubt * * * may have existed as a result of our opinion in the Mayerhefer case as to what proof was required of the plaintiff * * “In the instant case we un-qualifiedly hold that such proof (the third requirement) is necessary in order to admit the doctrine of res ipsa loquitur into a case such as this.” ■
*10 In my humble opinion the “third requirement”, to-wit: that plaintiff must prove “the bottle was in the same physical condition when sold to plaintiff as when delivered to the retailer by defendant’s agent” is completely unrealistic, for the reason that it is in direct conflict with the natural law —self-preservation is the first law of nature. When a damage suit, based on negligence, is pending against the manufacturer of the bottled beverage, is it reasonable to believe that there is the remotest possibility that the retailer would seat himself in the witness chair and admit that he tampered with the' bottled beverage before it was sold to the consumer. I think not. Finding himself in the middle of a law suit, the retailer would say in the future what he has consistently said in the past— I never tampered with the bottled beverage before I sold it to the consumer.
Justice Oliver Wendell Holmes once observed that “the life of the law has not been logic; it has been experience” and Samuel Johnson said “Law is the last result of human wisdom acting upon human experience for the benefit of the public.”
If the mores of the people inhabiting this planet were such that we could always expect the “truth” from the person placed in the position that the retailer of bottled beverages is — -by virtue of the “third requirement” — then the creation of courts of justice in our civilization would, in the ultimate, be a vain and useless gesture.
Query — would the “third requirement” be an integral part of the plaintiff’s proof by inference if the beverage was canned rather than bottled ?
The reason, as I understand it, in support of the logic of the “third requirement” is that the possibility exists that the retailer may have uncapped and recapped the bottled beverage and that during the interval the beverage may have become contaminated; but would this reason support the “third requirement” in connection with a canned beverage.
The courts of this State have always held the manufacturer of beverages to a very high degree of care; yet, by the same token, the courts have borne in mind that the manufacturer of beverages do not have at their disposal adequate means of disproving by eye-witnesses that the alleged incident did not actually transpire and, thérefore, it is an immaculately conceived judicial obligation to protect both the manufacturer and the consumer — not by embedding in our jurisprudence unrealistic technical procedural requirements of proof by inference -or res ipsa loquitur, but by a diligent examination of the facts or merits of each case.
In meeting the judicial obligation of protecting both the manufacturer and consumer, I am not convinced that the scales of justice are balanced by encumbering technicalities and unrealistic procedural requirements that, in the final analysis, create popular disrespect and ridicule among the very people for whose welfare the courts were initially created.
In my opinion, courts of justice should never find themselves in a position in failing to see and know what every layman of average intelligence has seen and known for some time.
The majority opinion states that “The three Courts of Appeal have held that where the plaintiff claims damages as the result of consuming a bottled beverage containing a foreign or harmful substance, to be successful it must be shown by him (1) * * * (2) * * * (3) that the bottle had not been tampered with or improperly handled after it left the bottler’s possession.”
The only conclusion that can be drawn from this statement is that the “third requirement” is not now open to question. In other words, the opinion endeavors to rely almost completely for logical substantiation upon the “doctrine of stare decisis” which, as we all know, was or is the basis of the English or common-law system of jurisprudence — the case being the philosophical key to the solution of all common-law enigmas or problems — but the so-called doctrine of stare decisis in Louisiana is employed not in its historical function of preventing any re-examination of a question once decided but merely as an *11 additional argument available equally to the majority of the court which feels that a former decision is correct, or to a dissenting or concurring judge protesting to the overruling of a decision which he believes to be sound.
In Louisiana the doctrine of stare decisis, conceived as such, is a myth. The case law in our jurisprudence has never been anything more than law de facto, and has never indicated the slightest trend to becoming law de jure. Our courts, to my knowledge, have never adopted stare decisis and whatever chance it had of infiltrating into our system has been obliterated by the sheer passage of time.
In my opinion, the Supreme Court and Courts of Appeal of this State show every disposition to follow the essential civilian judicial technique of never letting today become the slave of yesterday or the tyrant of tomorrow.
The Supreme Court of Louisiana overruled more cases during the past quarter century than it did during the first one hundred years of its existence. Thus, in Louisiana, the doctrine of stare decisis has been honored more in the breach than in the observance.
It is very interesting to observe that even the English have abandoned much of the common-law concepts that have, on occasion, infiltrated into our jurisprudence.
Lord Bowen, one of the ablest and most enlightened English judges, said in 1887— “It may be asserted, without fear of contradiction, that it is not possible in the year 1887 for an honest litigant in Her Majesty’s Supreme Court to be defeated by any mere technicality, any slip, any mistaken step in his litigation * * *. The law has ceased to be a scientific game which may be won or lost by playing some particular move.”
One of the strangest paradoxes in American judicial history is that while the present system of courts in the United States not including Louisiana is a copy of the English Courts of 1775, yet, after the English, by their Judicature Act of 1873, completely abolished it and inaugurated the modern system of jurisprudence, American judges and lawyers still hold on to the old worn out copy like grim death.
Dean Pound said — “Let us bestir ourselves to the end that taught law be that of living tissues and not that of dead fiber.” Another shortcoming, said he — “was undue servitude to the bondage of precedent, a fetish of immutability.”
As a parting injunction to the legal profession, Walter Clark, Chief Justice of the North Carolina Supreme Court in 1902, wrote — “The law should express the best sentiments of the age. It should move because all the World beside is moving. We should move up abreast of our age and not take our seats by the abandoned campfire of a generation gone before.”
I am of the opinion that our enlightened judiciary and legal profession heartily subscribe to this philosophy — to the end that our Courts of Justice may keep step with the civilization in which we live.
In the final analysis, our legal civilization is fundamentally a search for more complete efficiency, unencumbered by unrealistic proof by inference technicalities which, per se, ultimately facilitate the promotion of more adequate justice which, of course, is the real reason justifying the existence of courts of law.
It appears that the sum total of our jurisprudence applicable to the instant case has endeavored to say — -that the courts of this State will not permit either the manufacturer of bottled beverages or the consumer to take advantage of each other — and, in my opinion, this objective may continue to be accomplished without embedding in our jurisprudence unrealistic methods of proof by inference, but by a diligent examination of the merits or facts of each case. In this connection I have been particularly impressed with the technique used in Dye v. American Beverage Co., La.App., 194 So. 438 and which was followed in Mayerhefer v. Louisiana Coca-Cola Bottling Co., La.App., 45 So.2d 442, affirmed by the Supreme Court in 219 La. 320, 52 So.2d 866.