60 So.2d 873 (1952)
221 La. 919
LE BLANC
v.
LOUISIANA COCA COLA BOTTLING CO., Ltd.
No. 40664.
Supreme Court of Louisiana.
July 3, 1952.
Rehearing Denied October 7, 1952.
Frank T. Doyle, Robert G. Hughes, New Orleans, for petitioner.
Leo L. Dubourg, New Orleans, for plaintiff-appellee.
Polk & Culpepper, Alexandria, amici curiae.
McCALEB, Justice.
Plaintiff, alleging that she became ill as a consequence of consuming part of the contents of a bottle of Coca-Cola which contained a decomposed housefly, brought this suit for damages against Louisiana Coca-Cola *874 Bottling Company, the manufacturer and distributor of the beverage.
Defendant denied generally the charges of the petition. However, it admitted that it bottles and dispenses the soft drink and, for further answer, averred that, because of the modern methods employed in the bottling process at its plant, it is almost impossible for any foreign substance to enter the bottle or its contents before it is capped and made ready for consumption by the public. It also pleaded that, if the beverage consumed by plaintiff contained a housefly, it was not in the bottle when it left its plant and was delivered to the dealer.
Following a trial on these issues, there was judgment in the district court in favor of plaintiff for $300 damages. Defendant then appealed to the Court of Appeal where the judgment was reversed and the suit dismissed on the sole ground that, since plaintiff did not tender independent proof showing that the bottle containing the deleterious ingredient had not been tampered with or improperly handled after it left defendant's possession, she had failed to make out a prima facie case of fault on its part. In reaching this conclusion, a majority of the court[1] declared that, in this type of damage suit, plaintiff is required to prove that the foreign substance was contained in the bottle; that he suffered injury by reason of its presence therein and that the bottle had not been tampered with after it left the defendant's possession. See 55 So.2d 7. And the majority further deduced that this court, in its recent opinion in Mayerhefer v. Louisiana Coca-Cola Bottling Co., 219 La. 320, 52 So.2d 866, had subscribed to this view. Doubting the validity of these resolutions, we granted certiorari.
At the outset, it is apt to observe that, whereas the ruling under scrutiny finds support in the decisions of the Courts of Appeal cited in the opinion[2] there are two other cases, previously decided by that Court (Orleans Appeal) and not referred to in its decision, which are in direct contrast with the view it adopted. Those cases are Hill v. Louisiana Coca-Cola Bottling Co., La. App., 170 So. 45 and Dye v. American Beverage Co., La.App., 194 So. 438, 440.
In the Dye case it was stated that:
"* * * where the plaintiff shows by a preponderance of evidence that the beverage contained a foreign substance, that he consumed it and suffered injuries as a result, the burden of proof shifts to the defendant to excuse itself from liability by proving to the satisfaction of the court that the foreign matter did not enter the beverage during the bottling or manufacturing process."
The ruling in the Dye case is predicated, of course, on the assumption that the plaintiff has shown that he purchased the beverage in its original container, a capped and airtight bottle forobviously, without such proof there is no occasion to indulge in any sort of presumption. But, when it is shown that there was nothing unusual about the bottle and that it was in apparent good condition at the time plaintiff uncapped it, it is logical to infer that it had not been mishandled or its contents disturbed after it left the manufacturer's plant for distribution. Accordingly, when, under such circumstances, plaintiff proves that the beverage contains unwholesome matter and that he sustained injury from its consumption, he establishes a prima facie case for the assessment of damages.
It is to be borne in mind in these cases that the defendant company is engaged in the business of distributing its beverages to the public in sealed containers or capped bottles and that, by the very nature of its enterprise, it represents, we think, by advertisements extolling the quality of its *875 product, that it is fit for human consumption and free from deleterious matter. And, while there is not a direct contract to this effect between the consuming public and the manufacturer (as it distributes to retailers or middlemen who in turn sell to the consumer), it is fair to imply that, since the manufacturer, in marketing its products in capped bottles, intends them to reach the consumer in the same condition in which they leave the factory, a warranty of wholesomeness exists between it and the consumer. Therefore, it is difficult to discern why a plaintiff, suffering illness as the result of consuming deleterious matter contained in a bottled beverage, should shoulder the burden of establishing a negative fact by producing the middleman, or others if need be, to show that no one handling the bottle after it left the defendant's plant removed the cap and permitted foreign substances to enter its contents. Properly, since proof of tampering by others would provide an avenue of escape from liability, it would seem to be a matter of defense.
The holding of the Court of Appeal is apparently founded on the idea that, without proof negativing mishandling by others, the doctrine of res ipsa loquitur cannot be invoked. But this theory does not rest on a reasonable basis; it stems from an erroneous assimilation of this type of case to those actions for damages resulting from an exploding bottle of carbonated beverage, Ortego v. Nehi Bottling Works, 199 La. 599, 6 So.2d 77, and from leakage of drums of acid, Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441. In that class of cases, the plaintiff, seeking the benefit of res ipsa loquitur, must establish, as a condition precedent to its application, that everyone through whose hands the instrumentality passed after it left the manufacturer did not mishandle or disturb it in any way which might, perchance, have contributed to the injury. This is because res ipsa loquitur does not ordinarily apply when the instrumentality causing the damage is not under defendant's immediate control.
But, as stated in the opinion in Mayerhefer v. Louisiana Coca-Cola Bottling Co., supra, the rule obtaining in those matters is not relevent in an action for damages resulting from the consumption of deleterious ingredients contained in a bottled beverage. The reason is that a case of this sort is, in its essence, grounded upon the manufacturer's failure to comply with the warranty of wholesomeness resulting from the sale and distribution of its foods or beverages for consumption by the public in the original package or sealed containers. The plaintiffs in the explosion cases depend entirely upon the law of negligence for recovery; the plaintiff in this case is entitled to rely on defendant's implied warranty that its product is safe for human consumption.[3] Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L.R.A.,N.S., 480; Costello v. Morrison Cafeteria Co. of Louisiana, 18 *876 La.App. 40, 135 So. 245; MacLehan v. Loft Candy Stores, La.App., 172 So. 367; Hill v. Louisiana Coca-Cola Bottling Co. and Dye v. American Beverage Co., supra.
Turning now to the evidence in the case, it is shown that plaintiff's friend, a Mrs. Creath, purchased two bottles of Coca-Cola from K. & S. Grocery, which is located across the street from plaintiff's residence in Algiers (Fifth Municipal District of New Orleans), and brought them to plaintiff's home. They were there opened and plaintiff and her friend began drinking the beverage out of the bottles. Plaintiff says that, when she consumed about half of her bottle, she felt a slimy substance in her mouth which she spat into her hand and then put back into the bottle, which she corked. Shortly thereafter, she became nauseated and vomited, the nausea and indisposition continuing for a couple of days. Her testimony as to the occurrence is corroborated by Mrs. Creath and her husband supports her statement concerning her illness. According to a chemical analysis, it was shown that the contents of the bottle contained a deteriorated housefly.
The only evidence offered by defendant is to the effect that its plant is equipped with modern machinery and that, in view of the sanitary methods it employed in bottling the beverage, there is only a slight possibility that the foreign matter could have entered the bottle.
Thus, a question of fact was presented for determination. The trial judge accepted the testimony of plaintiff and her witnesses as genuine. From our examination of the evidence, we cannot say that he was manifestly wrong in his conclusion and therefore the award in plaintiff's favor should not have been disturbed.
For the foregoing reasons, the judgment of the Court of Appeal is reversed and it is now ordered that the judgment of the district court be and it is reinstated and affirmed. Defendant is to pay all costs.
HAMITER, J., concurs in the results.
HAWTHORNE, J., dissents and assigns written reasons.
LE BLANC, J., concurs and files written reasons.
LE BLANC, Justice (concurring).
I am not prepared to say that the conclusion reached by the Court on the facts in this case is wrong and therefore I concur in the decree. Neither, however, am I prepared to commit myself to the proposition that the doctrine of implied warranty applies in cases of this kind.
In my opinion a difference must be made in applying the doctrine of implied warranty between cases relating to articles of food and beverage which are offered for sale to the consumer in actually sealed containers and those like the beverage in the present case which is contained in a bottle that is closed by means of a compression cap that can be readily removed and replaced.
*877 It may well be that a manufacturer who sells an article of food or beverage in a sealed can, for instance, or in a container which is hermetically sealed, could be held to have impliedly warranted the soundness of wholesomeness of the article sold and that the package or container is free from foreign substances or deleterious matter. With regard to articles sold in that manner, the package or container in which it is sold may afford proof of itself to the consumer that it has reached him in the same state in which it left the manufacturer's hands. But this is not so, in my opinion, with regard to bottled beverages closed, as I have pointed out, only by means of a cap which is removable and which, with the use of certain gadgets that are now offered by the trade, can be replaced in the same condition in which it was before being removed.
Applying the doctrine of implied warranty on a manufacturer of such bottled beverages is almost tantamount to making him an insurer and practically imposing absolute liability on him. In this connection it is sometimes suggested that the manufacturer might protect himself by including in the price of the article a sufficient amount by which liability would be absorbed by the consuming public. Whilst that may offer a form of solution to the problem from an economic point of view it certainly lends no help in solving it from a legal standpoint which, after all, is what the courts are called upon to do in cases of this kind.
It has been the policy of the courts in this State, for the past several years, to follow the rule of res ipsa loquitur in these cases. Under the rulings made there were three requirements placed upon a plaintiff who sued a beverage company like the present defendant: First, he had to show that the bottle contained a foreign or deleterious substance; second, that he suffered injury for having partaken of some of the beverage, and third, that the bottle had not been tampered with after it left the defendant's possession. Having met these requirements he had made out a case and it then devolved upon the defendant, under the doctrine of res ipsa loquitur, to show that he was free of negligence. This was the pattern cut out in the various cases decided by the Courts of Appeal of this State, some of which are referred to in a footnote to the majority opinion herein, and, as I view it, that pattern was approved by this Court in the recent case of Mayerhefer v. Louisiana Coca Cola Bottling Company, 219 La. 320, 52 So.2d 866. That seemed to be a reasonable approach to the solution of a rather difficult problem which confronts the courts in cases of this kind and it is the fairest that I can think of. The present decision, for the first time uses a new method which, as I have stated, amounts to imposing absolute liability on the defendant. I believe that the jurisprudence which has been adhered to since the time it was established should be followed instead.
HAWTHORNE, Justice (dissenting).
In the instant case, plaintiff seeks to hold the manufacturer of a bottled drink liable in damages upon proof merely that the bottled beverage was purchased from a neighborhood grocery by a friend, was opened in plaintiff's kitchen, was partially consumed by her, and made her nauseated and ill because it contained a foreign substance which was subsequently identified as portions of a deteriorated housefly.
The Court of Appeal heldin my opinion properlythat, for plaintiff to recover, the doctrine of res ipsa loquitur had to be applied to establish negligence on the part of the defendant bottler, and that, since plaintiff had failed to prove that the bottled drink had not been tampered with or improperly handled after it left the defendant bottler's possession, the doctrine was not applicable. See LeBlanc v. Louisiana Coca Cola Bottling Co., Ltd., 55 So.2d 7.
As I understand the majority opinion, it is to the effect that the doctrine of res ipsa loquitur has no application in this type of case, that is, in a suit to recover damages for injuries resulting from the consumption of a bottled beverage, but that recovery may be had on the theory of implied warranty.
All the Courts of Appeal of this state without exception have considered that cases of this kind, that is, cases involving bottled beverages, were properly brought on the theory of res ipsa loquitur, and the jurisprudence at this time is uniform that *878 for the doctrine to be applicable it is necessary for the plaintiff to establish that the bottled beverage was not tampered with after it left the manufacturer's possession. Nichols v. Louisiana Coca-Cola Bottling Co., Ltd., La.App., 46 So.2d 695, Orleans; Jenkins v. Bogalusa Coca Cola Bottling Co., Ltd., La.App., 1 So.2d 426, First Circuit; Day v. Hammond Coca Cola Bottling Co., La.App., 53 So.2d 447, First Circuit; White v. Coca-Cola Bottling Co., La.App., 16 So. 2d 579, Second Circuit; Rowton v. Ruston Coca-Cola Bottling Co., Inc., La.App., 17 So.2d 851, Second Circuit; Camp v. Homer Coca-Cola Bottling Co., Inc., La.App., 20 So.2d 186, Second Circuit. Further, the opinions of the Courts of Appeal in some of these cases have been quoted with approval by this court. The majority opinion in the instant case has the effect of holding that all of these cases were decided on the wrong premise and of repudiating them.
The majority opinion quotes with approval from the case of Dye v. American Beverage Co., Inc., La.App., 194 So. 438, Orleans. It is significant to note that the writer of the majority opinion in the instant case was a member of the Court of Appeal for the Parish of Orleans at the time the Dye case was decided and was the author of the opinion in that case. He fails to state in the opinion in the instant case that the Orleans Court of Appeal later repudiated the holding in the Dye case by its decisions in the case of Nichols v. Louisiana Coca-Cola Bottling Co., Ltd., supra, and in the present case, and that the present view of that Court of Appeal is now in perfect harmony with that of the other Courts of Appeal of this state. What the author of the majority opinion is attempting to do in the instant caseand apparently with successis to make his conception of the proof necessary for recovery, as expressed by him in the Dye case, the law of this state. In that case the plaintiff was allowed to recover as a result of the negligence of the beverage company and was permitted to establish such negligence without showing that the bottle had not been tampered with after it left the manufacturer's possession. Since the action was in tort and recovery was based on negligence, I know of no way in which the negligence of the defendant could have been established in that case except by the application of res ipsa loquitur.
No citation of authority is necessary for the proposition that the sole purpose of the doctrine of res ipsa loquitur is to establish negligence on the part of the defendant, and for it to be applicable the thing or instrumentality that causes the injury must be under the exclusive control of the defendant. Without such control the doctrine is not applicable in any case, and for recovery the plaintiff must prove specific acts of negligence.
The doctrine has been extended, and reasonably so, to that class of cases where the article causing damage is in actual possession of the plaintiff but is considered to be in the constructive control of the defendant because proof has been made that it is in the same condition as it was in when it left the defendant's possession. In this class of cases are the exploding bottles and the contaminated foods and beverages. The evidence necessary to prove that the article which caused the injury is in the same condition as when it left the possession of the defendant may vary with the article involved and the circumstances of each case, but in no case can that proof be dispensed with. In cases involving sealed cans or packages the showing that they are so constructed that there is no reasonable possibility of altering or tampering with their contents before they reach the consumer is sufficient proof that they are in the same condition as when they left the defendant's possession. A bottled beverage is not in that class of cases because the cap can be removed and replaced without detection by the use of care. This distinction is recognized generally. See Annotation, Presumption of negligence from foreign substance in food, 171 A.L.R. 1209, and the excellent discussions in two recent decisions, Jordan v. Coca Cola Bottling Co. of Utah, Utah 1951, 218 P.2d 660; Underhill v. Anciaux, Nev. 1951, 226 P.2d 794.
That this distinction is a reasonable one is fully demonstrated by an incident, recently reported in the newspapers of this city, where a bartender was arrested and charged with taking the residue of beer left in *879 bottles sold by him to his customers, refilling bottles with such residue, recapping them, and selling them to his customers.
To permit recovery without requiring the plaintiff to show that the bottle was in the same condition as when it left the possession of the defendant, that is, freedom from tampering, is to permit recovery on some other basis than on the doctrine of res ipsa loquitur, for without such proof there is no proper foundation for res ipsa loquitur. I am of the opinion that all the Courts of Appeal of this state have been eminently correct in holding that for the application of the doctrine of res ipsa loquitur the plaintiff must prove freedom from tampering after the bottled beverage left the custody and possession of the bottler. In the instant case, as correctly pointed out by the Court of Appeal, 55 So.2d 7, 8, "* * * Nowhere in the testimony is there any evidence even remotely tending to show that the bottle had not been tampered with or handled improperly after it left the possession of the Louisiana Coca Cola Bottling Company * * *".
The realization that sufficient proof had not been made for the application of res ipsa loquitur may have prompted the author of the majority opinion to bolster his decision with the theory of implied warranty, which he never mentioned in the Dye case (from which he quotes) and which has never been the basis of recovery in bottled beverage cases by the consumer against the manufacturer in this state.
The majority opinion discusses the common law at length to support implied warranty as a basis of recovery in this case. Although there is some confusion in the common law as to whether warranty arises out of contract, tort, or public policy (See 1 Williston on Sales, rev'd ed., sec. 244a, p. 648; Jeanblanc, Manufacturers' Liability to Persons Other Than Their Immediate Vendees, 24 Va.L.Rev. 134, 148), it is unquestionable that warranty arises in the civil law only out of contracts. Arts. 2500 et seq., LSA-Civ.Code; Pothier, Treatise on the Contract of Sale (Cushing's tr. 1839), n° 103, p. 62. This has always been taken as a matter of course in the civil law. See Rabel, The Nature of Warranty of Quality, 24 Tulane L.Rev. 273, 280. Any theory of implied warranty on the basis of public policy which has been adopted by some of the common law states as shown by Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, cited in the majority opinion, is entirely inappropriate in a civilian jurisdiction.
The common law affords no authority for determining in this state whether lack of privity of contract prevents a sub-vendee from suing a manufacturer for defects in the article purchased. The methods by which the common law avoids the contract theory of warranty can be of no assistance on the problem in this state, where warranty is undoubtedly based on contract. The question of whether a sub-vendee may sue a manufacturer for defects notwithstanding that warranty is based on contract had not been answered by the courts of this state prior to this case, and there has been considerable conjecture on that subject. See Laclede Steel Co. v. Silas Mason Co., D.C., 67 F.Supp. 751; Comment, Warranty of Quality in Louisiana: Extent of Recovery Under the Implied-in-Law Warranty, 23 Tulane L.Rev. 130, 139; Note, 14 Tulane L. Rev. 470. It is unfortunate that the court here did not have the benefit of brief or argument on this very important question, and this lack may account for acceptance of the common law as being relative to this issue.
The matter is further clouded by the fact that plaintiff has not alleged a breach of warranty as a basis for recovery, and in truth she was not even a purchaser of the bottle of coca-cola, since it was bought by a neighbor and given to her. In the Court of Appeal the case was considered as a tort action, and in this court for the first time the theory of implied warranty has been considered as a basis for recovery in the case.
Conceding, however, that an action for breach of implied warranty is available to the plaintiff even though she was not a purchaser, I do not see how she can be relieved even under this theory of the case from proving that the bottle was in the same condition when it left the defendant as it was when she opened it. The question of tampering is as important under the implied warranty theory as under the res ipsa *880 loquitur theory because, in order for the vendor to be liable for breach of its implied warranty, the defect must have been in the article at the time it sold the bottle. See Pothier, op. cit. supra, n° 212, p. 130. Again, it is not reasonable to infer that a foreign substance was in a bottled beverage at the time it was sold by the manufacturer unless proof is made by the plaintiff that there was no reasonable opportunity for tampering in the time intervening between the sale by the manufacturer and the opening of the bottle by the plaintiff. Where recovery has been predicated on implied warranty in the common law, the cases show that such proof is necessary. Menaker v. Supplee-Wills-Jones Milk Co., 125 Pa.Super. 76, 189 A. 714; Nemela v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 104 S.W.2d 773; Curtiss Candy Co. v. Johnson, 163 Miss. 426, 141 So. 762; Coca-Cola Bottling Co. of Fort Worth v. Smith, Tex.Civ.App., 97 S. W.2d 761; Decker & Sons, Inc., v. Capps, supra; Beyer v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 75 S.W.2d 642; Geisness v. Scow Bay Packing Co., Inc., 16 Wash.2d 1, 132 P.2d 740; Strawn v. Coca-Cola Bottling Co. of Missouri, Mo.App., 234 S.W.2d 223.
It is a function of this court to clarify the law, and the Courts of Appeal show by their decisions that they conscientiously try to follow the law as announced by the decisions of this court. Under their interpretation of cases of this nature, they have been fully justified in accepting the doctrine of res ipsa loquitur as a basis of recovery, and in doing so have quoted from the opinions of this court. For instance, in this very case, the author of the opinion in the Court of Appeal quoted language from the case of Mayerhefer v. Louisiana Coca-Cola Bottling Co., Ltd., 219 La. 320, 52 So.2d 866, as justification for his applying the doctrine.
The writ in this case was granted to remove any doubt that may have resulted from our language in the Mayerhefer case, supra, but I am unable to see how the majority opinion in the instant case has accomplished this result.
I respectfully dissent.
NOTES
[1] Regan, J. took issue with the majority view in a separate opinion. See 55 So.2d 7, 9.
[2] Jenkins v. Bogalusa Coca-Cola Bottling Co., La.App., 1 So.2d 426; White v. Coca-Cola Bottling Co., La.App., 16 So.2d 579; Rowton v. Ruston Coca-Cola Bottling Co., La.App., 17 So.2d 851; Camp v. Homer Coca-Cola Bottling Co., La.App., 20 So. 2d 186; Mayerhefer v. Louisiana Coca-Cola Bottling Co., Ltd., La.App., 45 So. 2d 442; Nichols v. Louisiana Coca-Cola Bottling Co. Ltd., La.App., 46 So.2d 695 and Day v. Hammond Coca-Cola Bottling Co., La.App., 53 So.2d 447.
[3] There is a divergence of opinion among the State courts as to whether a manufacturer's liability in cases of this kind is predicated upon negligence or an implied warranty. In 22 Am.Jur. "Food" § 105, it is stated that, according to the weight of authority, the basis of liability of the manufacturer is negligence but it is recognized therein that there are respectable and strong opinions grounding the liability upon an implied warranty of wholesomeness of the product, notwithstanding the absence of any privity of contract. This, we think, is the better view which finds support in most of the latest cases on the subject. See Annotation 111 A. L.R. at page 1251, under the sub-heading "Liability on theory of implied warranty" citing Nemela v. Coca-Cola Bottling Co., Mo.App., 104 S.W.2d 773 and Coca-Cola Bottling Co. v. Smith, Tex.Civ.App., 97 S.W.2d 761, also subsequent annotation under same sub-heading in 142 A.L.R. pages 1494 and 1495, which follows a report of the decision of the Texas Supreme Court in Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, wherein a full discussion of the authorities on this matter is to be found.

The annotation in 142 A.L.R. declares, in substance, that, whereas there is a definite conflict of authority upon the question of the existence of an implied warranty in this type of action "* * * several recent cases have indicated a tendency to extend the theory of implied warranty or the analagous rule of public policy so as to allow the maintenance of such an action independently of negligence or of the traditional views as to the necessity of privity of contract. Some of this type of cases hold that the requirement of privity is satisfied by modern trade practices giving rise to general knowledge, chargeable to the manufacturer or processor, that middlemen do not purchase for their own consumption, but for the purpose of immediate release of the products to the public through the channels of retail trade."
The reason for imposition of liability on violation of an implied warranty is well stated by the Texas Court of Civil Appeals in Coca-Cola Bottling Co. v. Smith, supra, 97 S.W.2d 767, as follows: "* * * Manifestly, the Coca-Cola Company, defendant in this suit, manufactured and sold the same to the retailer, not for consumption by the latter, but to be consumed by an ultimate purchaser from the retailer. And the implied representation that it was wholesome and free of deleterious substances was intended to induce the consumer to purchase it, the same as advertisements of the qualities of such a beverage carried in the press and posted on the highways which are commonly resorted to by manufacturers of such articles. And since such representations were made to induce the ultimate purchase of the beverage from the retailer, it should follow that the defendant's implied warranty to the retailer who purchased from it with knowledge and intention on the part of the defendant that the beverage would be sold and consumed by a purchaser from the retailer ran with the article and inured to the benefit of the plaintiff who purchased from the dealer."