262 So.2d 520 (1972)
Mrs. Sandra MUSHATT, wife of/and Harold Mushatt
v.
The PAGE MILK COMPANY and Employers Insurance of Wausau.
No. 4928.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1972.
Thomas L. Giraud, New Orelans, for plaintiffs-appellees.
Ethel H. Cohen, New Orleans, for defendants-appellants.
Before SAMUEL, CHASEZ and BOUTALL, JJ.
BOUTALL, Judge.
This is a suit by the consumer of canned, evaporated milk against the processor *521 and canner thereof, for damages resulting from sickness occasioned to plaintiff by the consumption of part of the milk. The trial court awarded damages in the amount of $650.00 together with expert fees and costs, and from this adverse judgment, the defendant appeals.
The facts are that Mrs. Mushatt purchased a can of Page Evaporated Milk from a grocery and used it the next day in preparing a baked macaroni dinner. Shortly after eating, she became ill and suffered abdominal pains, nausea, vomiting and diarrhea. The next morning, while using some of the remainder of the milk with coffee, she discovered that the can made a rattling noise, and upon opening it, discovered several small pellets of solder. That afternoon, she sought the services of a physician, who determined that she was suffering from food poisoning, and began a course of treatment. The symptoms of nausea and diarrhea cleared up in several days, however, she testifies that she became very nervous as a result of the occurrence, and had to continue treatment for her nerves, for a considerable period of time. She seeks damages for this condition and her husband seeks recovery of their medical expenses.
The applicable law pertaining to this case is founded upon the rationale in the case of Le Blanc v. Louisiana Coca Cola Bottling Company, 221 La. 919, 60 So.2d 873 (1952), which considered an illness arising out of consumption from a bottle of soda pop. The court set out the following rule:
"* * * But, when it is shown that there was nothing unusual about the bottle and that it was in apparent good condition at the time plaintiff uncapped it, it is logical to infer that it had not been mishandled or its contents disturbed after it left the manufacturer's plant for distribution. Accordingly, when, under such circumstances, plaintiff proves that the beverage contains unwholesome matter and that he sustained injury from its consumption, he establishes a prima facie case for the assessment of damages." (60 So.2d 874)
Based upon these principles our court recently held in the case of Banks v. Jefferson Bottling Company, 249 So.2d 228 (La. App. 4th Cir., 1971):
"For plaintiffs to establish a prima facie case against the bottler they must prove: (1) the beverage was purchased in its original container; (2) the bottle apparently was in good condition when it was purchased and when it was opened; (3) it contained a foreign substance; and (4) the contents were consumed and injuries resulted therefrom." (Citing cases therein249 So.2d 229)
In the case at bar we are concerned with a can of evaporated milk, and here there is no quarrel with the appearance of the can or the fact that it was sealed. It is the contention of the defendant that the product did not contain a foreign or deleterious substance, and that no injuries resulted from the consumption of the milk. Defendant contends that the presence of several small pellets of solder, which is used in sealing the can, could not have caused any spoilage of the milk itself, and since the pellets were not themselves directly the cause of any injury, either by biting upon one or upon swallowing one, that plaintiff's condition must have occurred as a result of eating other food or other factors involved besides the consumption of the milk.
Certainly the defendant is correct in some phases of its defense. We note, of course, that this is not the classic case of a foreign substance such as a roach or a housefly or other noxious foreign material being introduced into the product. The evidence shows that solder is used in sealing the can after the milk is placed therein, and that the milk inside has direct contact with the solder sealer. Additionally, similar material is used in the manufacture of the can wherein the ends are soldered to the can, and the milk is also exposed to this. The solder is a mixture of tin and lead, and since this procedure has been *522 used in excess of 50 years, we can hardly consider that the presence of several additional pellets or drops of solder would, of themselves, cause sufficient reaction to spoil the milk or otherwise cause it to become harmful or poisonous. Defendant refers us to the case of Walker v. American Beverage Company, 124 So.2d 157 (La.App. 4th Cir., 1960), as authority for the fact that the presence of some simple foreign object, not of itself deleterious, or disgusting in appearance, is insufficient to cause the condition complained of. We are also referred to the case of English v. Louisiana Creamery, Inc., 181 So.2d 800 (La. App. 1st Cir., 1965) concerning the causal relation between the milk and the illness which occurred.
An examination of the jurisprudence makes it clear that the issues thus presented are questions of fact which must be determined by the trial judge in each case. The causal relationship must be demonstrated by the preponderance of the evidence and not merely a matter of conjecture. See: English v. Louisiana Creamery, Inc., supra.
The only medical expert who testified in this case was Dr. Ernest Cherrie, Jr., who saw Mrs. Mushatt the day after the incident and his examination clearly showed obvious signs of severe nausea, vomiting and diarrhea. Based upon the physical condition of plaintiff at the time of the examination, together with the history, he diagnosed that she was suffering from food poisoning. He had no occasion to examine the milk, or make other scientific tests in his office, and thus he could not say precisely or conclusively that the milk caused the patient's condition, although he could decisively say that food poisoning, due to something she ate at the pertinent time, was the cause of her condition. His testimony is such as to rule out any other probable cause of the illness, such as in the case of English v. Louisiana Creamery, Inc., and brings us to a discussion of what food caused the condition.
The evidence shows that the can of milk was sealed by at least twice the amount of the usual solder to seal a can. In addition, there were several pellets of solder in the can itself. Defendant contends, and its expert testifies, that the presence of additional amounts of solder to this extent would cause no harmful effects whatsoever to the milk, and as a matter of fact, it is the company's practice to permit employees to buy such milk at a reduced price for their own consumption. The only reason that defendant considers such a can of milk unmarketable is because of the possibility of breaking one's tooth on the pellets or in swallowing the pellets. The defendant's witness was the assistant plant superintendent, who was not only familiar with the operation of the plant in general, but also had been the bacteriologist in the plant for a number of years, and thus was familiar with the chemical composition of the milk and the various substances which may come in contact with it, and the procedures used in its processing. His testimony convinces us that the defendant exercises considerable care in the preparation of its products, and that occurrences such as this are unlikely to happen. However, because of human error, and the fact that sometimes machines also fail, occasionally, a can such as this could be produced.
As remarked above, considering only the presence of the pellets, it appears unlikely that plaintiff would be entitled to recover. However, the testimony of the defendant witness also shows that it is likely that when the soldering machine fails, that other substances may be introduced into the can of milk along with the extra solder.
The testimony shows that the end of the tipping iron used to place the pellet of solder into position is kept clean by use of an acid of some sort, which has the further utility of helping to keep the solder flowing. It is admitted that this acid could enter an improperly sealed can. Additionally, the process is such that a flame is projected upon the top of the can in the area of the hole to heat it in order to prepare it *523 to receive the solder sealer. In the event that this flame would not operate, it is possible to inject natural gas into the hole in the can. Normally, this could cause no damage because the can would not seal. However, if the can were later sealed, it would appear that some gas would be trapped therein. The testimony here is to the effect that there was a defect in the sealing process and it appears that the solder seal was more than doubled in size.
We note that there has been no analysis of the contents of the can and so we are unable to say what it was about the milk that had the effect that it did on Mrs. Mushatt. However, it is clear that the sealing machine was not working properly, that there were extra pellets of solder inside the can of milk, and that there is a likelihood that acid or natural gas entered the can during the sealing process. The evidence does not show anything abnormal about the other food consumed at the same time by Mrs. Mushatt, but does show that Mr. Mushatt, who consumed some of the same food at the same time, did have slight symptoms similar to his wife.
Under these circumstances it appears to us that plaintiff has made out a prima facie case that there was a foreign substance in the can of milk and that she suffered illness as a result thereof. This is sufficient to shift the burden of proof to the defendant to demonstrate its freedom from fault or negligence.
The defendant has presented no evidence relative to the effect that the acid or natural gas would have upon the milk or upon Mrs. Mushatt's body. Yet the defendant's witness testified that the acid on the tipping iron comes in contact with the solder, and that any pellets of solder falling into the can may have acid on them. Similarly, an imperfectly sealed can may be exposed to natural gas and it is admitted that there was something wrong with the sealing process. It was further admitted that the control device to monitor such defects as the presence of extra solder pellets should have rejected this can. We do not believe the showing here is sufficient to overcome the burden of proof imposed on the manufacturer.
Additionally, we cannot require the consumer to bear the burden of proving defects in consumer goods with absolute certainty. The purchaser of food and drink in sealed containers is entitled to rely upon the fact that the manufacturer represents it to be wholesome and pure. Le Blanc v. Louisiana Coca Cola Bottling Co., supra. It is required only that the elements of plaintiff's case be proven by a preponderance of the evidence.
The trial judge, although he did not render written reasons, obviously accepted the testimony of plaintiff and her witnesses as genuine, and concluded that plaintiff has exhibited a preponderance of the evidence. From our examination of the evidence detailed above we find sufficient basis to support his conclusion. We cannot disturb the judgment in plaintiff's favor without a showing of manifest error. None exists here and the judgment should be affirmed.
Appellant is cast for all costs.
Affirmed.