WATSON, Judge.
Plaintiffs herein, Robert Albert, Hinda Cooper Albert, Mattye Ervin Albert Charles, and Mattye Lois Albert Hall, individually, and on behalf of her minor child, Connie Marie Hall, filed this suit, alleging that some hog’s head cheese which was purchased from defendant, Hilton Lafleur, and manufactured by defendant, Jimmy Fontenot, d/b/a Frank Fontenot Sausage *271 Kitchen, made plaintiffs ill; that their illness resulted from food poisoning; that this food poisoning occurred as a result of negligence on the part of defendants in the manufacturing, storing or handling of the hog’s head cheese; and that plaintiffs are entitled to recover damages from defendants. The food poisoning allegedly occurred on or about October 18, 1967. The trial court rendered judgment in favor of defendants rejecting plaintiffs’ demands. Plaintiffs have appealed from the adverse judgment of the trial court. We affirm.
Counsel for plaintiffs contend in brief that the lower court erred in not applying the following principles of law to this case and cite the various cases in support thereof :
(1) Consumer cannot be required to bear burden of proving defects in consumed goods with absolute certainty. Mushatt v. Page Milk Company, 262 So.2d 520 (La.App. 4 Cir. 1972).
(2) A preparer of food is responsible in damages for breach of an implied warranty on account of unfitness of its product. Lesher v. Great Atlantic & Pacific Tea Company, 129 So.2d 96 (La.App. 2 Cir. 1961); writ of certiorari denied.
(3) Manufacturer and vendor of food stuff designed for human consumption is virtually insurer that such merchandise is pure, wholesome and free from foreign materials and deleterious substances. Gilbert v. John Gendusa Bakery, Inc., 144 So.2d 760 (La.App. 4 Cir. 1962).
We find that cases cited differ from the instant case.
As the court pointed out in the Mushatt case, supra, the issues presented in a case of this kind are factual ones which must be determined by the trier of fact in each case. “The causal relationship must be [established] by the preponderance of the evidence and not merely a matter of conjecture.” 262 So.2d 522. In the Mushatt case, supra, the appellate court found no error in the trial court’s conclusion that Mrs. Mushatt’s illness was caused by the substance consumed. We are, of course, presented with a different situation here where the trial court found that plaintiffs did not establish their case.
In the Lesher case, supra, the appellate court held that there was no manifest error in the trial court’s judgment sustaining an exception of no cause and no right of action on the part of the defendant store.
In the Gilbert case, supra, the food in question “ . . . was conclusively shown to contain some sort of bugs or other foreign matter,” 144 So.2d 762. That is not the case here.
As the trial court apparently found, the evidence establishes that plaintiffs were ill on the day in question, but the evidence is not sufficient to prove that their illness resulted from their consumption of the hog’s head cheese in question or that the hog’s head cheese contained food poisoning organisms. The laboratory report of the Louisiana State Board of Health states that the cheese in question was “Negative salmonella, shigella, Clostridia.” (TR. 31). The letter attached to the laboratory report states: “ . . . no food poisoning organisms were found therein.” (TR. 32).
We will review briefly the testimony presented in the trial court:
Mr. Bobby Savoy, an employee of the Louisiana State Department of Health in Opelousas, stated that on October 20, 1967, his supervisor instructed him to pick up some hog’s head cheese at Lafleur’s grocery in Opelousas. He stated that the hog’s head cheese was kept refrigerated until it was received at the laboratory in New Orleans on October 25, 1967.
John Buswell, an assistant professor of microbiology at USL in Layfayette, qualified as an expert in the field of medical bacteriology, testified that there are four main classes of food poisoning bacteria: shigella, salmonella, clostridia and staphylococci. He stated that with staphylococci the symptoms are very sudden in onset and *272 there is generally a high degree of vomiting. He stated that a cooked meat product would become contaminated with staphylococci bacteria within four to eight hours after being left warm or unrefrigerated. This expert disagreed with the report of the State Board of Health in its statement that no food poisoning organisms were present. The report says that there were “Over 3,000,000 coagulase negative staphylococci per gram.” (TR. 31) in the hog’s head cheese. Dr. Buswell testified that coagulase negative staphylococci can produce enterotoxins which cause symptoms of disease; that it is possible that the coag-ulase negative staphylococci mentioned could cause food poisoning and also just as possible that it could not. According to Dr. Buswell, it would depend upon the strain of staphylococci involved and there is nothing in the report of the Board of Health to show whether a kitten test, the only test as to the strain of staphylococci present, was or was not done. Dr. Buswell also testified that coagulase negative staphylococci food poisoning cases are in the minority and that the majority of staphylococci food poisoning cases involve coagu-lase positive strains. Dr. Buswell testified that the symptoms of this type of food poisoning, while severe, are temporary and short lived, lasting only about twenty-four hours, compared to other types. He stated that an infection could occur with 3,000,000 coagulase negative staphylococci per gram and it might also require more, depending upon the particular strain and how much enterotoxin it produced. Dr. Buswell testified that these bacteria would start growing in 30 minutes to an hour after being kept at any temperature over 40 degrees. Dr. Buswell further testified that, in view of the method of preparing hog’s head cheese, any infectious contamination would have had to be extraneous or occur after the preparation.
Edmond Charles testified that he went on a fishing trip with the plaintiffs; that they bought some hog’s head cheese from Mr. Hilton Lafleur; then stopped to dig bait; then stopped at the Fill Up and Bill Up in Port Barre; then stopped and bought some hooks. Mr. Charles testified that he did not eat any of the hog’s head cheese and he did not get sick. He testified that everyone else in the party got sick and that he took them first back to Opelousas and then to the Lafayette Charity Hospital. He testified that they started off on the fishing trip a little after twelve and returned to Opelousas a little after five.
Hinda Cooper Albert, wife of Robert Albert, testified that she was on the fishing trip with her two daughters, both named Mattye; that they bought the hog’s head cheese in the afternoon; that Edmond Charles got the bait; and that she served the hog’s head cheese to those in the party. She testified that she started getting sick when they got to the fishing pond, and that she remained sick for a couple of days. She testified that she and the child were the sickest ones and were kept at the hospital in Lafayette overnight. She testified that she had eaten nothing since she got up around five o’clock until she ate the hog’s head cheese. She testified that they went to the grocery store about 12:30 or 1:00 o’clock and that they ate the sandwiches of hog’s head cheese while they were driving. She stated that the child and one daughter started feeling sick on the way to Krotz Springs.
Mattye Lois Albert Hall testified that she is the mother of Connie Marie Hall and that she was on the fishing trip in question. She testified that they were going fishing in an oil field past Krotz Springs. She testified that she had not had anything but some coffee that morning before she ate the hog’s head cheese. She stated that she was still sick the next day and that she started feeling sick before they got to Krotz Springs.
Mattye Ervin Albert Charles, now married to Edmond Charles, testified that she was also in the group; that she ate some of the hog’s head cheese; that she was *273 sick along with the others. She testified that she was sick for a few days afterward.
Jimmy Fontenot, manager and part owner of Frank Fontenot Sausage Kitchen, testified that he sold Mr. Lafleur some hog’s head - cheese on October 14, 1967; and that he generally sold him hog’s head cheese twice a week at that time. He testified that at the time he was making hog’s head cheese and selling it in five pound containers; that he makes 40 or 50 pounds in a batch of hog’s head cheese; and that he had not received any other complaints about that particular batch. He stated that hog’s head cheese has a sour smell to it when it spoils and the color changes.
Mr. Joseph Hilton Lafleur testified that he bought the hog’s head cheese in question from Fontenot’s Meat Market on October 14, a Saturday and sold it on a Wednesday. He stated that he only took it out of his meat counter to slice it for sale and that the Health Unit picked up a sample of the cheese on the following Friday around noon. He stated that the sample came from the same block of cheese as that sold to plaintiffs. He also testified that he ate a piece of the same hog’s head cheese on Thursday or Friday of that week. He stated that plaintiff was the first customer in his store that morning and that he sold other pieces of the same hog’s head cheese but had no other complaints.
Mr. Elus Stelly testified that he was in the store when Hilton Lafleur ate a slice of hog’s head cheese approximately one half inch wide and that Mr. Lafleur said he was eating it to show that there was nothing wrong with it.
Robert Albert did not testify. The affidavit of his doctor, admitted into evidence as P-8, stated that he was unable to appear because of a cerebral vascular accident.
The evidence indicates that hog’s head cheese is prepared by boiling the meat at a temperature sufficient to kill bacteria and that both the defendant manufacturer and the defendant retailer thereafter kept it at temperatures low enough to prevent the growth of bacteria. While the sample analyzed in New Orleans did contain streptococci and coagulase negative staphylococci, it is possible that some of this developed after the purchase by plaintiffs in view of the fact that the laboratory test was done seven days later. Dr. Buswell stated that staphylococcus can grow at any temperature above 40 degrees Fahrenheit. Bobby Savoy picked up the cheese on October 20, 1967, in the afternoon and placed it in the refrigerator. It was then “ . brought to Lafayette in a refrigerated container and there put on a refrigerated truck and sent to New Orleans.” (TR. 46). There is, of course, no way of knowing the degree of refrigeration involved. In any event, the New Orleans report stated that “ . . . these high counts (of alpha hemolytic streptococci and coagulase negative staphylococci) are of no particular significance.” (TR. 32). Dr. Buswell testified that the coagulase negative staphylococci mentioned in the report could or could not be one which would cause food poisoning and that the amount stated in the report might or might not be sufficient to cause an infection, depending on the strain involved.
As we assess the evidence, it is possible that plaintiffs’ complaints were caused by the hog’s head cheese in question, and it is also possible that their complaints were caused by their taking the hog’s head cheese on a fishing trip and leaving it unrefrigerated for a long period of time. It is also possible that something else caused their symptoms. The trial judge apparently accepted the testimony of defendant Lafleur that the cheese was- purchased early in the morning and thus had remained unrefrigerated for several hours before it was consumed. Also he may well have been impressed with the evidence that no other customers had become sick from eating the same cheese. The trial judge had an opportunity of hearing the witnesses *274 and judging their credibility and he concluded that plaintiffs had not proven their case. We find no manifest error in his conclusions.
All costs of this appeal are assessed against plaintiffs-appellants.
For the foregoing reasons the judgment of the trial court is affirmed.
Affirmed.